[Crim. No. 3964. First Dist., Div. Two. Feb. 15, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD JOSEPH MONTERO, Defendant and Appellant.

Benjamin M. Davis for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Robert B. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

KAUFMAN, P. J.—Appellant, R. J. Montero, and his co-defendants, R. L. Green and C. W. Martinie, were charged jointly by an information dated December 30, 1960, in two counts: the first for possession of marijuana in violation of section 11530 of the Health and Safety Code, the second for possession of a deadly weapon in violation of section 12020 of the Penal Code. All three entered pleas of not guilty, and after properly waiving a jury trial, were tried together

on February 10, 1961. The court found appellant Montero and Martinie guilty of possessing marijuana as charged in count one, but dismissed the deadly weapon count as to both; Green was found guilty on both counts. After denying the defendants' respective motions for a new trial, the court entered its judgment committing Montero to the Youth Authority for the term prescribed by law.

On this appeal from the judgment, Montero contends that the evidence is insufficient to show that he had knowledge of the presence of the drug, which is an essential element of the crime of possession. The question of the weight of such evidence is not for an appellate court and we cannot say that the circumstances hereafter related as a matter of law gives rise to a mere suspicion and do not permit a reasonable inference of guilt.

By stipulation, the People submitted their case on the transcript of the preliminary hearing, which revealed the following: About midnight on December 3, 1960, several San Francisco police officers answered a report of a noisy party at an apartment house at 3415 22d Street. The officers contacted the landlady and proceeded to apartment number 6 where they heard loud music and "people moving around." When the police knocked and identified themselves, the music stopped but the sounds of people moving continued. The landlady informed the officers she had seen the tenant of the apartment leave earlier. When she and the policemen attempted to enter with a key, they found the door double-locked. The officers then investigated a sound at the rear of the apartment and discovered one Dudley departing through the rear window. When Dudley saw the police, he returned through the window and admitted the police through the front door.

In the apartment, the two officers found two girls beneath a bed with a hypodermic needle between them. The girls stated that "three of the fellows" had gone to North Beach to buy more narcotics. About 45 minutes later, the landlady alerted the officers that the three men who had been at the apartment earlier were circling the block in an automobile. Ten minutes later, she told the officers the same car had parked in the parking area behind the apartment house. The officers proceeded to the parking lot and saw Martinie outside the car. On seeing the police officers, he started back toward it. The officers halted him and ordered the appellant Montero, who

was behind the wheel, and Green, who was in the back seat, to get out of the car.

The landlady immediately identified the three men as the same persons who had been in the apartment earlier in the evening. None of them made any reply. The three suspects were told to face the car and Officer Castro noticed that Martinie was running his foot up and down his pants leg and "struggling with it." The officer reached down to Martinie's left sock and discovered a match box containing marijuana. When the officer asked Martinie where he had gotten it, Martinie did not reply. The appellant, however, replied: "It's a plant." The appellant admitted that the car was his. When the police searched the car, they found two "crutches" and a "roach" on the center of the floor of the front seat, as well as a pair of metal knuckles on the car heater beneath the dash. Later at the station, Officer Castro asked the appellant what he knew about the marijuana. The appellant answered "nothing" and made no responses when further questioned about the source of the marijuana.

All three of the defendants testified in their own defense. The appellant stated he had been at the home of Green's sister with Martinie, when Green appeared and asked for a ride to Guerrero and 22d. The appellant obliged, but could not find a parking place at the destination. He circled the block and had just parked the car in the alley to let Green off when the officers appeared. The appellant admitted that the car was his, but denied any knowledge of the marijuana or knuckles. He also stated that he had been at Green's sister's house until about midnight, but denied being at the party at 3415 22d Street. Earlier in the evening, while on his way to Green's sister's house, he bumped into Martinie on Mission Street.

Martinie's testimony of the activities on December 3 substantially corroborated the testimony of the appellant. Martinie stated that the coat he was wearing had been lent to him by Green, who was his brother-in-law, and that when the police appeared, Green told him to get rid of the match box inside the sport coat. He, therefore, hid the match box inside his sock until the police recovered it.

Green's testimony substantiated that of Martinie as to the match box and sport coat. He further stated that the marijuana, the "roach" and the knuckles were his and admitted having been in the apartment at 3415 22d Street earlier. He further testified that neither appellant nor Martinie knew

anything about the marijuana, and stated that he had found both the marijuana and the knuckles but could not remember where.

Appellant contends that the evidence is insufficient to show his possession of the marijuana with knowledge of the narcotic nature of the drug which is an essential element of the crime of possession. He seeks to invoke the rule that the mere fact that a defendant was in a car in which marijuana was found is not sufficient in itself to convict the defendant where there were several persons in the vehicle. ■ The People agree that to establish unlawful possession of the narcotic, it must be shown that the defendant exercised dominion and control of the drug with knowledge of its presence and narcotic character, but argue that these matters may be established by circumstantial evidence (*People* v. *Redrick*, 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255]). We think there is ample circumstantial evidence here. The uncontroverted evidence established that the appellant was the owner and driver of the automobile in which the three defendants rode and that the marijuana, "roach" and two "crutches," items used in the smoking of marijuana, were found in the car. To show the knowing possession of these items, the conduct of the parties, admissions or contradictory statements and explanations are frequently sufficient (*People* v. *Foster*, 115 Cal.App.2d 866, 868 [253 P.2d 50]). When the appellant and his companions were confronted with the match box of marijuana found on Martinie, the appellant's reaction was "It's a plant." We think this reaction was an indication of guilty knowledge as well as the reaction of one familiar with the drug (*cf. People* v. *Ortiz*, 185 Cal.App.2d 622 [8 Cal.Rptr. 494]; *People* v. *Foster, supra*). There was also evidence that the "roach" was found in the center of the floor of the front of the car, in close proximity to the appellant's position as he sat driving the vehicle.

■ As might be expected, no sharp line can be drawn to distinguish the congeries of fact which will and that which will not constitute sufficient evidence of a defendant's knowledge of the presence of a narcotic in a place to which he had access but not exclusive access and of which he had some control, but not exclusive control. The credence and ultimate weight to be given the evidence of the particular circumstances are, of course, for the trier of fact and it is the trier of fact and not the appellate court that must be convinced of a defend-

ant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.

■ Appellant here further argues that Green's admissions relating to the marijuana and the items found in the car, completely exculpate him. After a comprehensive review of the cases relating to the sufficiency of evidence in cases like the instant one, our Supreme Court said in *People* v. *Redrick,* 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255], at page 290: "The existence of possible exculpatory explanations, whether they are simply suggestions not excluded by the evidence or even where they could be reasonably deduced from the evidence, could not justify this court's rejecting the determination of the trier of fact that defendant is guilty unless on appeal it 'be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.' (*People* v. *Tom Woo* (1919), 181 Cal. 315, 326 [1] [184 P. 389].) While on the record here it may be that the evidence of guilt is not wholly persuasive *to us,* under the above stated analysis of the *legal sufficiency* of such evidence and the foregoing principles of appellate review, we cannot say that a link in the chain of essential proof is missing; hence it is not within our province to interfere with the determination of the trier of fact."

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.