[Crim. No. 10564. Second Dist., Div. Three. May 15, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. BUDDY GENE PROCHNAU, Defendant and Appellant.

John H. Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bruce William Dodds, Deputy Attorney General, for Plaintiff and Respondent.

FORD, P. J.—In a nonjury trial the defendant was found guilty of the three offenses with which he was charged, namely, possession of a sawed-off shotgun in violation of section 12020 of the Penal Code, possession of a .32 caliber

automatic pistol in violation of section 12021[1] of the Penal Code, and possession of morphine in violation of section 11500, Health and Safety Code. The defendant waived reference of the case to the probation officer for a probation report and, with respect to each offense, he was sentenced to be punished by imprisonment in the state prison for the term prescribed by law. He has appealed from the judgment.

At the trial it was stipulated that the defendant's parole officer would be deemed to have been called as a witness and to have testified that at 2:40 p.m. on May 28, 1964, he sent by teletype the following message to the Pasadena Police Department: "This is your authorization to arrest and place detainer per Section 3056[2] of the Penal Code on Buddy Gene Prochnau, RA 76565, if able to locate. Reportedly armed. Driving a 1956 Pontiac, license number unknown, four-door, green and cream color. May be lodged cheap hotels, Pasadena area, and has a quantity of drugs in car attempting to sell."

While the reporter's transcript does not show an express stipulation that the case of the People would be submitted on the transcript of the testimony given at the preliminary hearing, the statements of counsel support the inference that both the People and the defendant intended to proceed in that manner. The minutes of the court for the day of the trial are in part as follows: "It is stipulated that the Court may determine this matter upon the transcript of the testimony had at the preliminary hearing; that the witnesses who testified in the Court below may be deemed to have been called, sworn and testified at this trial with the same force and effect; that People's exhibits received at the preliminary hearing may be received here; that any stipulations entered into at such hearing may be deemed to be entered into at this trial and both sides reserve the right to introduce additional evidence. The Court states he has read and considered the entire transcript of the preliminary hearing." No contention is made on this appeal that such minutes are not correct. Which of the two records is to be deemed controlling is to be

---

[1] Section 12021 is in part as follows: ". . . any person who has been convicted of a felony under the laws of the United States, of the State of California . . . who owns or has in his possession or under his custody or control any pistol, revolver, or other firearm capable of being concealed upon the person is guilty of a public offense, . . ."

[2] Section 3056 of the Penal Code is as follows: "Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison."

determined from a consideration of the circumstances under which the proceedings were had. (*People* v. *Hymes,* 161 Cal.App.2d 668, 674 [327 P.2d 219].) In the circumstances here presented it is clear that the minutes of the court must be held to be the controlling record.

Officer Ross testified that he arrested the defendant at 77 North Fair Oaks Avenue in Pasadena at approximately 3:30 a.m. on May 29, 1964. He said that his "authority" for the arrest was a "want" for violation of parole put out with respect to Mr. Prochnau which he received from his shift commander, Lieutenant Mennig, at approximately 15 minutes before midnight on May 28. The information included a description of a car, a 1956 four-door Pontiac, cream and green in color.

Officer Ross further testified that at approximately 3:30 a.m. on May 29 he observed a vehicle similar to the one described. He turned on the red lights on his car and the other vehicle came to a stop in front of 77 North Fair Oaks. The defendant emerged from the driver's side and approached the officer. Upon being asked for identification, the defendant gave the officer a driver's license bearing his name. The officer advised the defendant that he was wanted for violation of parole and that he was being arrested for that reason. The car was impounded and taken to the police impound area at the rear of the police station.

On cross-examination Officer Ross testified that another person was in the vehicle when the defendant got out. That person was not then arrested. On redirect examination the officer said that the defendant was driving the car when he first saw him.

Officer Shaw testified that he went to the place where the Pontiac automobile was. When the tow truck arrived the automobile was towed to the impound area at the police station. Part of Officer Shaw's testimony as to what thereafter happened was as follows: "I had a tow form partially made out. A portion of it was missing, the registered owner and what was in the vehicle. . . . I had opened the driver's side of the door, looked, did not see the registration posted. I looked on the sun visor and on the steering post and did not see any. When I had opened the door I noticed a key partially hidden under the floor mat on the left-hand side. There was only one key in the car that I could observe, that was the key in the ignition. I removed the other key from under the floor mat, placed it in the glove compartment, which was locked,

turned it, and it opened. I was looking for a registration when I opened the glove compartment at that time. Upon opening the glove compartment I saw two automatic pistols laying one on top of another. . . . I locked the glove compartment at that time, closed the gates behind the car, and walked down behind the station and informed Sergeant James and Officer Ross of what was in the glove compartment. . . . [W]e returned to the vehicle and the impound stall, the keys of which I had kept with me. I again unlocked the glove compartment and withdrew this weapon, also another pistol, noted the serial, pulled back the slide and noted that the gun was cocked, the safety was on, there was one live round in the chamber, removed all the rounds from the gun, plus the one in the chamber, placed it in a plastic bag. Did the same to the second gun that was in the glove compartment. In the upper right-hand side of the glove compartment there was a plastic sack which contained various items which I withdrew.''

A further portion of Officer Shaw's testimony was: ''Q. Now I show you People's Three for identification and ask you if you have ever seen that weapon before? If so, where and when for the first time? A. Yes, sir, it was on the morning of the 29th of May, some time after the sun had risen, we were continuing to check the contents of this vehicle. . . . A. Officer Ross and myself. . . . A. After having made a list and itemized and checked the contents of the glove compartment, I removed the key and went to the trunk and opened up the same with the key that had been under the floor mat. As I opened it I noticed that there were two new white wall tires sitting on a suitcase. There was a large suitcase, an overnight bag. There were [sic] clothing in a brown paper sack, close to the rear of the car was a blue overnight bag. There was a new tire on the spare tire rim. Removed the tires, made note of the serial numbers, removed the suitcase, found that it belonged to Mr. Prochnau, with the personal clothing and papers. I lifted the blue overnight bag which was sitting toward the rear and closest to me and found it contained a great deal of weight and its size, it did not appear that it should weigh that much. In opening it I found laying lengthwise in the bag this sawed-off shotgun with a silver tape around the butt and the hand stock. . . . A. There was another sawed-off weapon in there.''

On cross-examination Officer Shaw said that he did not have a search warrant for the search of the car. He did find ''registration'' in the glove compartment. He was not told by any

officer to search the car. On redirect examination the officer was asked why he searched the car and he answered: "It had the entire back seat covered with clothing. I wanted to make a list of it so there wouldn't be any discrepancies about when it was taken in and when it was again released to the owner." That was why he initiated his search.

Officer Smith testified that he was one of the investigating officers in the case. About noontime on June 1 he had a conversation with the defendant in the jail division of the Pasadena Hall of Justice relating to weapons found in the car. Part of the officer's testimony was: "He stated that he had no knowledge of any of these weapons, the sawed-off rifle or shotgun or the blue steel Star automatic, but he did state that this polished metal chrome .32 caliber automatic was his, that he had purchased it for his self protection from a person known to him, but that he refused to divulge his identity." That statement was made freely and voluntarily.

At the trial, the defendant objected to the introduction in evidence of any of the seized objects, citing in support of his position the case of *People* v. *Burke,* 61 Cal.2d 575 [39 Cal. Rptr. 531, 394 P.2d 67]. The objection was overruled.

In the resolution of the questions presented on this appeal it must be kept in mind that the defendant was on parole and that he was taken into physical custody by the Pasadena police pursuant to the request of his parole officer. (See *People* v. *Garner,* 234 Cal.App.2d 212, 226 [44 Cal.Rptr. 217].) In *People* v. *Goss,* 193 Cal.App.2d 720 [14 Cal.Rptr. 569], the court stated at page 724: "It is clear that although on parole, the defendant was 'a prisoner under sentence and in the legal custody . . . of the Department of Corrections' (*In re Marzec,* 25 Cal.2d 794, 797 [154 P.2d 873]). He was subject to the rules and regulations of the Adult Authority (Pen. Code, § 3052), . . . The granting of parole does not change his status as a prisoner but simply pushes back the prison walls for him, allowing him wider mobility and greater personal opportunity while serving his sentence [citation]. Section 3056 of the Penal Code provides: 'Prisoners on parole shall remain under the legal custody of the department and shall be subject at any time to be taken back within the inclosure of the prison.' The only difference between the defendant's status and that of other prisoners, is that he is permitted to stay outside the prison walls, although he is still in custody [citations]."

When the Pasadena police detained the defendant for his

parole officer, there was not an arrest in the same sense as in the case of a person who is taken into custody by the police because of a criminal offense alleged to have been committed by him but of which he has not been convicted. As stated in *People* v. *Denne,* 41 Cal.App.2d 499, at page 510 [297 P.2d 451] : "It is unnecessary for a parole officer to apply for a warrant to 'arrest' a parolee who is already his prisoner and who is at all times *in custodia legis.* The administration of the parole system must be realistic, and not strangled in technical niceties. A parole officer's physical apprehension of his prisoner for suspected violation of parole is not an 'arrest' in the sense that a peace officer arrests a private individual suspected of a crime but a mere transfer of the subject from constructive custody into actual or physical custody. Having constructive custody of his prisoner at all times, there is nothing unreasonable in a parole officer's search of the prisoner's premises where, as here, he has reasonable cause to believe the parole has been breached."

█ In the present case the Pasadena police officers were acting as an arm of the parole officer in taking the defendant into physical custody rather than performing their customary duties. Under circumstances of that nature it would appear to be reasonable for them, as it would have been for the parole officer had he acted in person, to make suitable provision for the safeguarding of the vehicle and its contents. But, for reasons which will be stated hereinafter, it is not necessary to determine whether such suitable provision included the right to impound the car.[3]

The core of the matter is not whether the police officers acted without express authority in state law in impounding the car ; it is whether their subsequent conduct was reasonable in the light of the constitutional guarantees with respect to the matter of search and seizure. (See *Cooper* v. *California,* 386 U.S. 58, 60 [17 L.Ed.2d 730, 733, 87 S.Ct. 788, 790].)[4]

---

[3]Section 22650 of the Vehicle Code is as follows: "It is unlawful for any peace officer or any unauthorized person to remove any unattended vehicle from a highway to a garage or to any other place, except as provided in this code." Section 22651 of the Vehicle Code sets forth specific situations in which "Any member of the California Highway Patrol or any regularly employed and salaried deputy of the sheriff's office of a county in which a vehicle is located or any regularly employed and salaried officer of a police department in a city in which a vehicle is located may remove a vehicle from a highway." But there is no provision specifically covering the matter of the impounding of a vehicle under circumstances of the nature of those presented in the case now before this court.

[4]In *Cooper* the Supreme Court stated (386 U.S., at p. 61, 17 L.Ed.2d at

The defendant places reliance on *Preston* v. *United States,* 376 U.S. 364 [11 L.Ed.2d 777, 84 S.Ct. 881]. In the opinion of the Court in *Cooper* it was stated (386 U.S., at page 61, 17 L.Ed.2d, at page 733, 87 S.Ct., at page 791): Preston was arrested for vagrancy. The arresting officers took his car to the station simply because they did not wish to leave it on the street. It was not suggested that they did this other than for Preston's convenience or that they had any right to impound the car and keep it from Preston or whomever he might send for it. The fact that the police had custody of Preston's car was totally unrelated to the vagrancy charge for which they arrested him. So was their subsequent search of the car."

In the present case it was a reasonable inference that the police officers impounded the vehicle for the purpose of safeguarding it and its contents until proper disposition could be made of the vehicle rather than for the purpose of a search thereof by the police. The act of determining the person to whom the vehicle was registered was one which could have been undertaken by the police at the time the defendant was stopped.[5] But even if the vehicle was unlawfully impounded, the police still had the right and duty to determine the person to whom the vehicle was registered for their guidance in the ultimate disposition of the vehicle and its contents.

The manner in which Officer Shaw undertook to determine the presence of a registration card was not unreasonable. He looked for the registration card on the steering post, on the visor and, finally, in the glove compartment, the three most common places on or in which he could reasonably expect to locate the registration card. (Cf. *People* v. *Simons,* 208 Cal. App.2d 83, 85 [25 Cal.Rptr. 57].) Such conduct involved no unreasonable search in the constitutional sense.[6] When in the

p. 733, 87 S.Ct., at p. 790): "But the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment. Just as a search authorized by state law may be an unreasonable one under that amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one."

[5]The requirement that there be a visible registration card in an automobile is set forth in section 4454 of the Vehicle Code. (See *People* v. *Grubb,* 63 Cal.2d 614, 618, fn. 4 [47 Cal.Rptr. 772, 408 P.2d 100].)

[6]With respect to what constitutes a "search" as that term is used in the Fourth Amendment to the federal Constitution and section 19, article I, of our Constitution, the Supreme Court stated in *Bielicki* v. *Superior Court,* 57 Cal.2d 602, at page 605 [21 Cal.Rptr. 552, 371 P.2d 288]: " '[T]he term implies some exploratory investigation or an invasion and

course of his justifiable conduct Officer Shaw observed two automatic pistols in the glove compartment, the police officers, knowing that the defendant was a convicted person on parole, were not bound to ignore the weapons even though they were not related to Officer Shaw's purpose of seeking the registration card for the vehicle. (See *People* v. *Myles,* 189 Cal.App.2d 42, 47 [10 Cal.Rptr. 733].) Having found the pistols and the plastic sack, which apparently contained narcotics, under circumstances which did not violate the defendant's constitutional rights, the officers were warranted, without stopping to obtain a search warrant, in opening the trunk of the vehicle for the purpose of seeing whether additional contraband was present there. (See *People* v. *Nebbitt,* 183 Cal.App.2d 452, 459-460 [7 Cal.Rptr. 8].) As stated in *Cooper* (17 L.Ed.2d, at pages 733-734) : ''It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States* v. *Rabinowitz,* 339 U.S. 56, 66 [94 L.Ed. 653, 660, 70 S.Ct. 430].'' In this case the search made after observation of the objects in the glove compartment was reasonable.

The evidence was sufficient to sustain a determination that the defendant was in possession of the .32 caliber automatic pistol, the narcotics found in the glove compartment, and the sawed-off shotgun found in the trunk of the car. It is, of course, true that to establish unlawful possession of a contraband object it must be shown that the defendant exercised dominion and control over the object with knowledge of its presence and contraband character. But such matters may be established by circumstantial evidence. (*People* v. *Redrick,* 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255].) In the present case the defendant was the driver of the vehicle. The key to the glove compartment was ''partially hidden under the floor mat on the left-hand side.'' The same key was used to open the trunk. Although Officer Shaw's testimony that he removed the suitcase from the trunk and ''found that it belonged to Mr. Prochnau, with the personal clothing and papers,'' expressed conclusions, no

quest, a looking for or seeking out. . . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way.' [Citation.] The constitutional guarantees, of course, prohibit not all searches but only those that are 'unreasonable.' [Citations.] And '[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances.' [Citations.]''

objection or motion to strike was made with respect to that testimony. As stated in *People* v. *Montero,* 200 Cal.App.2d 295, at pages 299-300 [19 Cal.Rptr. 274] : "The credence and ultimate weight to be given the evidence of the particular circumstances are, of course, for the trier of fact and it is the trier of fact and not the appellate court that must be convinced of a defendant's guilt beyond a reasonable doubt." Since the circumstances reasonably justified the determination of the trier of fact as to the defendant's possession of the particular object as alleged in the respective counts of the information, this court is not free to interfere with such determination unless there is merit in the *Escobedo-Dorado* contention which remains for consideration.[7]

 It is obvious that the defendant's statement at the jail that the .32 caliber automatic belonged to him was, under the circumstances, tantamount to a confession of guilt of the crime charged in the second count of the information. The defendant was then in custody and the circumstances were such as to compel the conclusion that the police had undertaken a process of interrogation that lent itself to eliciting incriminating statements. The record does not disclose that the defendant was informed of his right to counsel and of his right to remain silent at any time prior to or during the conversation. In the face of a silent record this court on appellate review cannot presume that the police informed the defendant of his rights to remain silent and to counsel. The burden is on the prosecution to show that the defendant was either informed of such rights or otherwise waived them. (*People* v. *Brooks,* 64 Cal.2d 130, 136-137 [48 Cal.Rptr. 879, 410 P.2d 383].) Since the record does not disclose a compliance with the *Escobedo-Dorado* rule, and since the statement made at the police station was in the nature of a confession, the judgment of conviction of the crime of possession of the .32 caliber automatic pistol in violation of section 12021 of the Penal Code cannot stand.

The defendant's statement that the .32 caliber pistol found in the glove compartment belonged to him gave support to the inference that he also possessed the narcotics found in the same compartment. Adhering to the standard enunciated in *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87

[7]The court found the defendant guilty on October 1, 1964. Consequently, the failure to make an objection based on the *Escobedo-Dorado* rule does not preclude appellate review. (*People* v. *Natividad,* 240 Cal. App.2d 244, 246-247 [49 Cal.Rptr. 437].)

S.Ct. 824] we cannot say that we believe that the erroneous admission of the defendant's statement was harmless beyond a reasonable doubt insofar as the defendant's trial and conviction with respect to the count as to possession of morphine in violation of section 11500 of the Health and Safety Code is concerned.

The sawed-off shotgun was found in the trunk of the car. There was evidence to the effect that the defendant's suitcase and personal clothing and papers were also in the trunk. Officer Shaw testified that when he opened the door of the automobile he noticed a key partially hidden under the floor mat "on the left-hand side." He used that key to open the glove compartment. Later he used the same key to open the trunk. The defendant's statement that the .32 caliber pistol belonged to him was sufficient to cast doubt in the mind of a trier of fact as to his veracity in denying knowledge of the sawed-off shotgun and gave support to the inference that he possessed both weapons, access to each of which was afforded by means of the same key. Under the *Chapman* criterion, we cannot state that we believe that the erroneous admission of the defendant's statement was harmless beyond a reasonable doubt insofar as the defendant's trial and conviction with respect to the charge of possession of a sawed-off shotgun in violation of section 12020 of the Penal Code is concerned.

The judgment is reversed.

Cobey, J., and Moss, J., concurred.