[No. A043961. First Dist., Div. Four. Oct. 24, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
DENISE VALENCIA, Defendant and Appellant.

COUNSEL

Pasternak & Razo and R. Bruce Finch for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

POCHÉ, J.—A jury found Denise Valencia guilty of possessing a sawed-off shotgun in violation of Penal Code section 12020, subdivision (a). Her sole contention on appeal is that the prosecution failed to prove that she knew the object was a sawed-off shotgun. We conclude that the prosecution was not required to prove such knowledge. Accordingly, we affirm the judgment.

FACTS

Detective Thomas Leary testified that on November 9, 1987, acting under a warrant, he and other officers searched the El Sobrante home shared by appellant and the man she described at trial as her "common law husband." On top of a hutch in a bedroom shared by appellant and her "husband," officers found a weapon wrapped in a sock. The weapon was an Interarms 410-gauge side-by-side double-barrel shotgun with the stock and barrel cut off. It measured 19½ inches overall; the barrel was 10¾ inches long.

When officers showed the gun to appellant, she asked what they intended to do with it. They said they were going to seize it. She said that they couldn't, "that she was keeping it because it belonged to her deceased brother."

Appellant testified that the last time she had seen the gun before being shown it by police was about a week after the death of her brother Jacob in April 1986. Her "husband" was moving some of her brother's things into her house and she saw the gun. Her "husband" put it away, and she thereafter knew it was "around and about" the house, but she "didn't know exactly where." It could have been in the house or in the appurtenant garage or shed. She testified that even if she stood on a chair she could not reach the top of the hutch where it was found. She denied telling officers not to take the gun or that she was keeping it.

## ANALYSIS

As worded at the time of the pertinent events, Penal Code section 12020, subdivision (a), provided in part, "Any person in this state who . . . possesses . . . any instrument or weapon of the kind commonly known as a . . . sawed-off shotgun . . . is guilty of a felony . . . ." Subdivision (d)(1) defined "sawed-off shotgun" as "any firearm . . . manufactured, designed, or converted to fire shotgun ammunition having a barrel or barrels of less than 18 inches in length . . . or any weapon made from a rifle or shotgun (whether by manufacture, alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches."

In accordance with the approved instruction (see CALJIC No. 12.40), the jury was told that the prosecution had to prove two elements: that the defendant exercised control or had the right to exercise control over a sawed-off shotgun, and that she had knowledge of the presence of the weapon. Appellant does not deny that these elements were established. ■ She contends, however, that the prosecution had to prove an additional mental element, i.e., that she had knowledge of the weapon's "contraband character."[1]

We addressed a similar contention with respect to Penal Code section 12220, commonly known as the "machine gun law," in *People* v. *Corkrean* (1984) 152 Cal.App.3d 35 [199 Cal.Rptr. 375]. The defendant there had

---

[1] In fact the jury was instructed that the prosecution had to show knowledge of the "presence and character of the weapon." Appellant's precise argument is not that this instruction was inadequate, but that the evidence was insufficient to support a finding that defendant knew the " 'character of the weapon.' " Since we conclude that there was no necessity for such a finding, we do not consider the sufficiency of the evidence.

modified an AR-15 rifle in a manner which made it capable of firing automatically. This made it a machine gun within the statutory definition. (See Pen. Code, § 12200.) The defendant denied knowing that the modification would have this effect. On appeal, he contended that he could not be convicted of possessing a machine gun without a finding that he knew the weapon could fire automatically. He argued that the case came under the rule in *People* v. *Winston* (1956) 46 Cal.2d 151, 158 [293 P.2d 40], which held that a conviction for possessing narcotics requires "knowledge of the object's narcotic character—that is, 'knowledge that the facts exist which bring the act . . . within the provisions of [the] code.'" (Quoting *People* v. *Gory* (1946) 28 Cal.2d 450, 456 [170 P.2d 433].) Or, as stated another way, "knowledge of the narcotic character of the article possessed is an essential ingredient of the offense charged." (*People* v. *Winston, supra,* 46 Cal.2d at p. 161.)

We rejected the contention that prosecutions for possession of a machine gun are subject to the rule in *Winston.* We adhered instead to the analysis of legislative intent adopted in *People* v. *Daniels* (1953) 118 Cal.App.2d 340, 343-345 [257 P.2d 1038]. As the *Daniels* court observed, the machine gun law used the term "knowingly" in defining the offense of transporting a machine gun, but not in defining simple possession. (*Id.* at pp. 343-344.) In contrast, the narcotics law did not use the term "knowingly" to describe any of the proscribed actions. (*Id.* at pp. 344-345.) Therefore it appeared that the Legislature had deliberately omitted from the offense of possessing a machine gun any requirement that the defendant know the contraband nature of the object. By 1984, when we revisited the issue in *Corkrean,* this interpretation had been reinforced by the Legislature's numerous amendments to the statute, making further selective use of the term "knowingly" while leaving undisturbed the language construed in *Daniels.* (See *People* v. *Corkrean, supra,* 152 Cal.App.3d 35, 40.)

We therefore concluded that "in the machine gun law and related provisions of The Dangerous Weapons' Control Law, the Legislature has manifested its intention to dispense with knowledge of the character of the item possessed as an element of specified crimes." (*People* v. *Corkrean, supra,* 152 Cal.App.3d at p. 41.) In response to the defendant's argument that such a rule was unreasonable, we observed that in the absence of constitutional compulsion we were powerless to impose a requirement not intended by the Legislature and that defendant's recourse must be to that body.[2]

The analysis in *Corkrean* was extended to sawed-off shotguns in *People* v. *Azevedo* (1984) 161 Cal.App.3d 235 [207 Cal.Rptr. 270], where the court

---

[2] No constitutional challenge has been raised here, and we imply no determination as to the potential merit of any such challenge.

considered an argument that "knowledge of the contraband character of a shotgun (i.e., barrel length less than 18 inches or overall length less than 26 inches) is an element" of the offense of possession. (*Id*. at p. 239.) Like appellant here, the defendant cited *People* v. *Prochnau* (1967) 251 Cal.App.2d 22, 30 [59 Cal.Rptr. 265], in which it was assumed that knowledge of "contraband character" was necessary to a conviction for possessing a sawed-off shotgun. The *Azevedo* court, however, found more persuasive the reasoning in *People* v. *Corkrean, supra,* and concluded that "possessing a sawed-off shotgun is a crime even though the defendant does not know the dimensions of the weapon or reasonably believes those dimensions bring the weapon within lawful limits." (*People* v. *Azevedo, supra,* 161 Cal.App.3d at p. 241.)

Relying on two passages from *Azevedo*—which we agree are somewhat puzzling—appellant asserts that the case supports her contention that a defendant must have knowledge of the contraband character of a sawed-off shotgun in order to be convicted of the offense. In one passage the court remarked, "Provided a person *knows the weapon is a sawed-off shotgun,* knowledge of the dimensions is neither an element of the offense which must be proved, nor a defense which a defendant may assert." (*People* v. *Azevedo, supra,* 161 Cal.App.3d at p. 238, italics added.) Elsewhere the court observed, "It is not a heavy burden for a person who *knowingly possesses a sawed-off shotgun* to first determine the dimensions of that weapon or otherwise possess it at his or her own peril." (*Id*. at p. 241, italics added.) From these remarks appellant concludes that a conviction requires knowledge that the weapon is a "sawed-off shotgun."

As noted, we find these remarks somewhat perplexing. We cannot determine the meaning or practical effect of a requirement that the defendant must "know[ ] the weapon is a sawed-off shotgun."[3] The statutory definition of a sawed-off shotgun is keyed to length; a shotgun is within the statute if it has a barrel shorter than 18 inches.[4] Thus one cannot know whether a

---

[3] Appellant offers no concrete formulation of what such a rule would mean. She variously describes the requisite mental state as (1) knowledge that "the weapon was a sawed-off shotgun"; (2) knowledge that "the gun had been truncated from a longer length"; (3) knowledge that "the thing is a genuine shotgun or rifle, 'sawed-off (i.e., shortened) '. . . by manufacture, alteration, modification, or otherwise. . . .' "; (4) "knowledge of the essential character of the weapon which brings it within the general class"; and (5) knowledge of "the basic nature of the thing."

[4] Appellant implies that a weapon is not a "sawed-off shotgun" unless it has been shortened from its original length. (See preceding footnote.) But the former statute included in its definition "any firearm . . . *manufactured* . . . to fire shotgun ammunition *having a barrel or barrels of less than 18 inches* in length . . . ." (Former Pen. Code, § 12020, subd. (d)(1).) This language appears to cover any shotgun with a barrel under 18 inches, whether or not it has been literally "sawed off." A different interpretation was perhaps mandated where the prosecution relied on overall length; in that case the former statute seemed to contemplate a

device is a "sawed-off shotgun," as defined in the statute, without knowing its dimensions. It follows that the defendant cannot "know[ ] the weapon is a sawed-off shotgun" unless the defendant knows its dimensions. Yet the holding of *Azevedo* is that in order to be convicted of possession the defendant need *not* know the dimensions of the object.

Moreover, to require knowledge of the character of the weapon is flatly inconsistent with the analysis in *Corkrean* which the *Azevedo* court expressly approved. (*People* v. *Azevedo, supra,* 161 Cal.App.3d at p. 240.) We concluded in *Corkrean* that the Legislature intended to penalize possession of a machine gun "without regard to the defendant's awareness of the character of the item possessed." (*People* v. *Corkrean, supra,* 152 Cal.App.3d at pp. 39-40.) The *Azevedo* court likewise concluded that in offenses of this kind, the Legislature "delete[d] the need for a person to know the contraband character of that weapon." (*People* v. *Azevedo, supra,* 161 Cal.App.3d at p. 241.) To require the prosecution to prove that the defendant knew the thing possessed was a sawed-off shotgun would be irreconcilable with that legislative intent.

We also reaffirm our view in *Corkrean* that statutes involving possession of narcotics deal with a significantly different problem insofar as scienter is concerned, and therefore involve a different calculus as regards legislative intent and the reasonableness of dispensing with the element of knowledge of the contraband character of that which is possessed. It is often the case that a controlled substance appears entirely innocent, i.e., its harmful nature is not immediately apparent. Most homes contain various white powders, crystalline materials, or green leafy substances. To convict someone of possessing a narcotic, when he or she reasonably believed it was baking soda, rock sugar, or oregano, might offend widely shared notions of simple fairness. (See *People* v. *Cole* (1952) 113 Cal.App.2d 253, 258 [248 P.2d 141] [injustice of convicting person who is given marijuana cigarettes in ordinary cigarette pack, and who believes them to be tobacco].)

Sawed-off shotguns, automatic rifles, and other patently dangerous weapons present a wholly different situation. They are not ambiguous substances. They are, as Justice Douglas said of hand grenades, "highly dangerous offensive weapons." (*United States* v. *Freed* (1971) 401 U.S. 601, 609 [28 L.Ed.2d 356, 362, 91 S.Ct. 1112].) The Legislature could well conclude that their possession is punishable without proof of guilty knowledge because, as

weapon which had been altered from its original form. (Former Pen. Code, § 12020, subd. (d)(1).)

The current statute may be intended in part to eliminate this very problem. It replaces the term "sawed-off shotgun" with "short-barreled shotgun," and includes any shotgun under 26 inches overall, or with a barrel under 18 inches. (Pen. Code, § 12020, subd. (c)(1).)

with hand grenades, "one would hardly be surprised to learn that [their] possession . . . is not an innocent act." (*Ibid.*) Or as Justice Brennan said of this entire category of weapons, specifically including sawed-off shotguns, "the likelihood of governmental regulation of the distribution of such weapons is so great that anyone must be presumed to be aware of it." (*Id.* at p. 616 [28 L.Ed.2d at p. 366] (conc. opn.).)

The Legislature could rationally conclude that anyone who sees such a device can and should be assumed to recognize its potentially lethal character; that anyone proposing to take possession of such a device must ascertain whether such possession is legal; and that anyone taking possession without confirming the legal right to do so runs the risk that his or her conduct will be punished as a felony. Since this is what the Legislature apparently intended by the statute in question, and since no constitutional impediment to its enforcement has been suggested, we give it effect according to its terms.

We conclude that the only mental state the prosecution was required to prove was that appellant knew she had possession of the item in question. No contention is made that the evidence did not support the jury's finding on that issue. The judgment of conviction is affirmed.

Anderson, P. J., and Channell, J., concurred.