[No. E007427. Fourth Dist., Div. Two. June 3, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL J. LANHAM, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.

## COUNSEL

Valerie K. Cadigan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Holly D. Wilkens and Gil P. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

TIMLIN, Acting P. J.—Defendant was convicted by jury on both counts of an amended information. Count 1 alleged that on March 7, 1989, he violated Penal Code section 12021, subdivision (a)[1] by being a person convicted of a felony and having in his possession a firearm. Count 2 alleged that on March 7, 1989, defendant violated section 12020, subdivision (a) by being in possession of a bullet which carries or contains an explosive agent. After pronouncement of judgment, defendant was sentenced as follows: Count

[1]All further statutory section-number citations refer to the Penal Code unless otherwise stated.

1—upper term of three years and count 2—midterm of two years to run. concurrently with the sentence on count 1.[2]

The court credited against the prison terms a total of 316 days for preconviction custody, 211 days being for actual custody and 105 days for conduct credit.

Defendant appeals from his conviction on count 2.[3] He also appeals from the sentencing on counts 1 and 2 and the trial court's determination of the preconviction custody credit to which he is entitled. He assigns three errors on appeal. He contends that: (1) the trial court erred in not instructing the jury that a necessary element for conviction of possession of a bullet containing an explosive agent is defendant's knowledge that the bullet contained such agent; (2) the trial court erred in not including in its computation of preconviction custody credit, including conduct credit, an additional 31 days for preconviction custody served in an unrelated criminal case while he was free on bail in the instant case; and (3) the trial court erred by sentencing defendant to concurrent sentences on counts 1 and 2, in violation of section 654. We disagree and will affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 7, 1989, defendant entered a residence in the City of Hesperia while deputies from the San Bernardino County Sheriff's Department were present and awaiting his arrival. At the moment of entry, the deputies ordered defendant to freeze and put his hands up. As he was raising his hands, one of the deputies noticed that defendant had a semiautomatic handgun in his waistband with the hammer cocked. The weapon was a 9 millimeter Taurus semiautomatic pistol. It was loaded. The weapon was seized by one deputy and another deputy conducted a cursory patdown search of defendant's person and searched a jacket which defendant was wearing. The deputy could not recall with certainty if defendant was actually wearing the jacket when it was searched. During the patdown the deputy

---

[2]The reporter's transcript of the sentencing proceedings recites the following statement by the trial court regarding its sentence on count 2: "As to Count 2, carrying a bullet with an explosive agent, the Court imposes the midterm of two years and orders that to run concurrent with the term imposed as to Count 1." The clerk's minutes of the sentencing proceedings state that defendant was sentenced to three years' imprisonment on each of counts 1 and 2 and such prison terms would run concurrently with each other. The abstract of judgment-commitment prepared by the clerk also states that the sentences on both counts 1 and 2, respectively, were for the upper terms of three years, said terms to run concurrently with each other.

[3]Defendant does not appeal from the conviction and pronouncement of judgment on count 1.

removed a speed loader[4] from one of the pockets in the jacket and noticed that the speed loader contained six bullets, three of which were .38-caliber bullets and three of which were .357-caliber bullets. All six bullets would fit a .357 weapon but they do not interchange with a semiautomatic revolver which has a magazine. None of the six bullets in the speed loader fit the semiautomatic pistol taken from defendant.

Deputy Roger Hughes, who seized the speed loader, removed from it the six bullets and inspected each one. He noted that one of the .38-caliber copper-topped bullets was unusual because it had an object inside its hollow point. He gave the speed loader and the six bullets to Senior Deputy Sheriff William Myers, who is a bomb technician and a member of the arson-bomb detail of the sheriff's department.

Detective Myers, testifying as an expert witness, said that the speed loader, which he received from Deputy Hughes, contained six hollow pointed bullets three of which fit a .357 Magnum revolver and three of which fit a .38 special revolver. He testified that a hollow point bullet differs from a round nose bullet. A round nose bullet is solid and there is no visible hole in it or any changes. A hollow point bullet has a hollow point or cavity at the point of the bullet and a hole in the top portion of the bullet. When a round nose bullet is fired from a weapon and hits an object, it goes through that object without a lot of deformation, but a hollow point bullet, after it is fired from a weapon, deforms when it hits the target. It mushrooms and makes a wider hole and creates much more damage to the object.

He further defined an explosive bullet as one which carries a small explosive charge in the bullet itself. When that bullet is fired from a gun and hits an object, it explodes upon impact and causes more damage to the target. Instead of piercing and tearing through the target, an explosive bullet tears into the object and then explodes.

When Deputy Myers inspected the speed loader and examined the bullets, he noticed that one bullet appeared to have something in its hollow point. With the naked eye he looked inside the hollow point and saw a small arms pistol primer which one uses if he or she reloads a bullet.[5] He observed the bottom area of the primer cup, which is the part that the firing pin normally

---

[4]A speed loader is a mechanism designed to load a revolver quickly. It contains six bullets. After you open the cylinder of a revolver, you can insert the speed loader, twist it and this loads the revolver with six bullets at one time. After the weapon is loaded, the speed loader is discarded.

[5]A primer consists of various component parts and fits into the base of the shell case which holds all the component parts of a bullet. The primer itself contains, among other parts, a cup which contains an explosive. The explosive is a powder which is poured into the cup and is a high explosive.

hits if the primer were being used conventionally as part of the process of firing a bullet from a revolver. If this particular bullet was fired from a weapon, the portion of the bullet which would hit the target first would be the bottom of the primer cup.

Deputy Myers testified that at a later time he X-rayed that bullet. The X-ray ". . . indicated that there was something, probably metal, inside of that hallow [sic] cavity of the bullet . . . ." After X-raying the bullet he dislodged the object inside the cavity and identified it as a pistol primer. This primer was an explosive and appeared to be functional. Deputy Myers further testified that he also found inside the cavity a white but unclear substance, similar to paraffin wax. It appeared to hold the primer to the bullet.

He then expressed his opinion that the placement of the primer near the hollow cavity of the bullet indicated that it was designed so that when the bullet was fired and impacted its object, it would explode. Deputy Myers also testified that the subject bullet would still contain an explosive agent even if it were placed in the weapon, the weapon misfired and the bullet was not projected.

As to count 2, the defense primarily was that defendant did not own the overcoat in which the speed loader and explosive bullet were found. His testimony and that of other witnesses was that the jacket belonged to his friend, Pat, with whom he went on March 7, 1989, to the desert to shoot weapons. He testified that he met Pat at Debra Jean Perez's house before going to the desert and when they left the house, he picked up Pat's jacket without realizing it was not his and wore it. Pat had a .357 Ruger Security 6 handgun when he went to the desert.

Defendant, however, did testify that before he arrived at the Hesperia residence on March 7, 1989, he had reached into the pocket of the jacket for cigarettes. At that time he realized it was not his jacket because he found no cigarettes in the pocket but a speed loader. He looked at the speed loader and saw six bullets in it. He then inspected the bullets and determined them to be for a .357 revolver which was a weapon he did not own. When he looked at the bullets he did not notice anything unusual about them but only observed that three were different than the other three. He then returned the speed loader to the jacket pocket.

The record does not show that there was any discussion between the court and counsel or any request by defense counsel regarding the court instructing the jury that one of the elements of the offense charged in count 2 was

that the defendant know that the subject bullet contained an explosive agent.

Among the instructions read to the jury by the court were the following:

CALJIC No. 1.21: "The word 'knowingly' means with knowledge of the existence of the facts in question. Knowledge of the unlawfulness of any act or omission is not required."

CALJIC No. 12.40 (modified), in pertinent part: "Defendant is accused in Count 2 of the information of having violated Section 12020 of the Penal Code, a crime.

"Every person who has in his possession a bullet which carries or contains an explosive agent is guilty of violating Section 12020 of the Penal Code.

"It is not necessary to constitute the offense charged against the defendant that the bullet be concealed upon his person or be capable of such concealment or that it be carried upon his person.

"In order to prove such crime, each of the following elements must be proved:

"1.  A person exercised control or had the right to exercise control over the bullet containing or carrying an explosive agent.

"2.  Such person had knowledge of the presence of said bullet."

After two and one-half days of deliberation, the jury returned its verdicts of guilty as to both counts 1 and 2.

Additional facts relevant to the issues raised in this appeal are set forth in the discussion portions of this opinion.

DISCUSSION

I

KNOWLEDGE THAT BULLET CONTAINED AN EXPLOSIVE AGENT IS NOT AN ELEMENT OF THE OFFENSE OF POSSESSING A BULLET CONTAINING AN EXPLOSIVE AGENT

■    Defendant contends that the trial court committed prejudicial error when, in reading to the jury CALJIC Instruction No. 12.40 as modified,

regarding the charge in count 2 of violating section 12020, subdivision (a),[6] it did not inform the jury that in addition to the two stated elements of that offense which plaintiff had to prove, there was a third element: that the defendant had knowledge that the bullet contained or carried an explosive agent.

Defendant asserts as authority in support of this proposition several judicial opinions, relating to convictions for possession of controlled substances. These opinions clearly hold, following the seminal cases of *People v. Gory* (1946) 28 Cal.2d 450, 456 [170 P.2d 433] and *People v. Winston* (1956) 46 Cal.2d 151, 158 [293 P.2d 40], that an essential element of the crime of possessing narcotics is the possessor's knowledge of the narcotic character of the particular object he or she possesses.[7] Defendant, however, misses the critical point which is that here the defendant is charged and convicted of possessing a dangerous weapon, in violation of section 12020, subdivision (a), which is a part of The Dangerous Weapons' Control Law (Law).

In resolving this issue, we are guided by and adopt the analyses in *People v. Corkrean* (1984) 152 Cal.App.3d 35 [199 Cal.Rptr. 375] and *People v. Valencia* (1989) 214 Cal.App.3d 1410 [263 Cal.Rptr. 301] in which the same court confronted a similar question. In *Corkrean* the defendant was convicted of possession of a machine gun in violation of section 12220. In *Valencia*, the defendant had been convicted of possessing a sawed-off shotgun in violation of section 12020 subdivision (a). In both cases defendants asserted that the prosecution had to prove that defendant knew the contraband character of the gun, impliedly contending that such knowledge is an element of the charged offense. Both opinions stated that the important question is whether the Legislature in its adoption of the Law and the many subsequent amendments to it intended that for certain described offenses a necessary element was knowledge of the contraband character of the object possessed.

In *Corkrean*, the court was faced with determining such intent as to section 12220 which provided that any person who possessed or knowingly

---

[6]Section 12020, subdivision (a) provides in pertinent part:

"(a) Any person in this state who . . . possesses . . . any bullet containing or carrying an explosive agent . . . is guilty of a felony."

[7]Defendant cited *People v. Prochnau* (1967) 251 Cal.App.2d 22 [59 Cal.Rptr. 265], which involved a defendant who had been convicted not only of possessing a shotgun and being an exfelon in possession of a concealable firearm, but also possession of a narcotic. *Prochnau* did state in dicta as a general principle of law that to establish the unlawful possession of a contraband object, it must be shown that a defendant exercised dominion and control over it with knowledge of its presence and contraband character. In stating that principle it relied on *People v. Redrick* (1961) 55 Cal.2d 282 [10 Cal.Rptr. 823, 359 P.2d 255], which only concerned a conviction of possession of a narcotic. *Prochnau* is not helpful in our analysis because it did not specifically apply that legal principle to the firearm convictions and relied on a possession of narcotics case to support it.

transported a machine gun was guilty of a public offense. It: (1) reviewed the legislative purpose and terms of the Law; (2) noted the earlier case of *People v. Daniels* (1953) 118 Cal.App.2d 340 [257 P.2d 1038], which was filed shortly before the Law was enacted and which held that under the Machine Gun Law of 1927, the possessor of a machine gun need not know it is a machine gun to be in violation of the law but a transporter of such a weapon must have such knowledge because the Legislature wrote "knowingly" before "transportation" and not before "possession"; and (3) applied the statutory rule of construction that the Legislature is presumed to be aware of existing judicial practices and interpretations when it enacts a statute. (See *People v. Carrasco* (1981) 118 Cal.App.3d 936, 945 [173 Cal.Rptr. 688].)

The court in *Corkrean* followed *Daniels* and determined that the Legislature, by using the word "knowingly" in the Machine Gun Law of 1927 only as to the transportation of such weapon but not as to possession, manifested a clear intention to punish any possession of such an object irrespective of whether the possessor had knowledge that the object was in fact a machine gun. But as to transportation of such a gun, the transporter was required to know that the object was a machine gun.

The court pointed out that since 1953 and the publication of the *Daniels* opinion the Law has been amended many times. In so doing, the Legislature has added the word "knowingly" to certain prohibited acts but omitted it as to other acts. *Corkrean* concluded that "the Legislature's repeated selective use of the word 'knowingly' throughout the Dangerous Weapons' Control Law thus supports the *Daniels* court's conclusion that, in the weapons field, the Legislature has consciously distinguished between possessory and other offenses requiring knowledge, and possessory offenses punishable without regard to the defendant's awareness of the character of the item possessed." (152 Cal.App.3d at pp. 39-40.)[8] It held that knowledge that the weapon possessed is an automatic one is not an element of the crime proscribed by section 12220.

As mentioned earlier, *Valencia, supra*, 214 Cal.App.3d 1410, involved a conviction of illegal possession of a shotgun in violation of section 12020, subdivision (a), the same section at issue here. It followed the reasoning of *Corkrean* and determined that "to require the prosecution to prove that a

---

[8]Actually, in 1953 the Legislature did impose in section 12420 the requirement of "knowingly" to the possession of tear gas or a tear gas weapon. Regarding the added 1982 offense of possession and transportation of specified handgun ammunition, it imposed the "knowingly" element to both possession and transportation. (See §§ 12320, 12321.) On other occasions after 1953, it has used "knowingly" only in regard to "transportation."

defendant knew the thing possessed was a sawed-off shotgun would be irreconcilable with the [Legislature's] intent." (*Id.* at p. 1415.)

Persuaded by *Corkrean* and *Valencia*, we conclude that when the Legislature added to the Law in 1978 the prohibition against possession of a bullet carrying or containing an explosive agent, it was well aware of the holding in *Daniels*. For 25 years after *Daniels* it has selectively used the term "knowingly" in further amendments to the Law, thereby demonstrating its intention that by not qualifying the possession of a bullet carrying or containing an explosive agent with "knowingly," the possessor's knowledge of the bullet's presence was sufficient for conviction. There was no need that the possessor also know the explosive nature of the bullet.

We appreciate defendant's argument that because of the size and appearance of a machine gun or shotgun, the possessor has a more reasonable opportunity to know its contraband nature than would the possessor of a small bullet in which an explosive agent may be so enclosed that it would not be visible to the naked and trained eye. (In the instant case, the pistol primer explosive was visible to the naked eye although it was also subjected to an X-ray examination.) It therefore is unreasonable to burden persons who possess bullets to inspect them to see if they contain explosives. While there is some appeal to this position, the record in this case shows that bullets containing explosives are not sold in the general commercial market but are individually made by persons possessing bullet reloading equipment.[9] It appears that most people, including recreational hunters, target shooters and weapons enthusiasts who purchase bullets in the commercial market place, would be unlikely possessors of such bullets.

In any event, we agree with the comment in *Corkrean, supra*, 152 Cal.App.3d 35, which responded to the same type of argument: "Moreover, as indicated, in the machine gun law and related provisions of The Dangerous Weapons' Control Law, the Legislature has manifested its intention to dispense with knowledge of the character of the item possessed as an element of specified crimes. [Citation.] In these circumstances, and in the absence of constitutional compulsion to construe the statute as requiring knowledge that the firearm is a machine gun [citation], we are not at liberty to construe section 12220 to comport with our notions of reasonableness. (See *People* v. *Daniels, supra*, 118 Cal.App.2d at pp. 344-345.) Whatever the merit of appellant's argument, the proper forum for its resolution is the Legislature, not this court. This is particularly true where, as here, any decision construing the statute to require knowledge would affect not only

---

[9] In November 1988, law enforcement officers, during a search of premises occupied by defendant, observed in his bedroom equipment for reloading.

section 12220, but the entire spectrum of possessory offenses under The Dangerous Weapons' Control Law." (152 Cal.App.3d at p. 41.)

We hold that defendant's knowledge of the explosive nature of a bullet in his possession is not an element of the offense of possession of a bullet containing or carrying an explosive agent, and that therefore the People are not obligated to prove such knowledge as part of their case in chief. The only mental state the prosecution is required to prove is that defendant knew that he had possession of the bullet. Accordingly, the trial court did not err by failing sua sponte to instruct the jury that knowledge of the contraband nature of the bullet was an element of the offense.[10]

II, III*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgment is affirmed in full. Remanded to the trial court for its direction to the court clerk to correct the minutes of the sentencing hearing and the abstract of judgment to show that defendant was sentenced on count 2 to imprisonment for the midterm of two years concurrent with the prison term sentence imposed on count 1. After such correction the court shall transmit to all appropriate governmental agencies, including the California Department of Corrections, the corrected abstract of judgment.

McKinster, J., and McDaniel, J.,† concurred.

Appellant's petition for review by the Supreme Court was denied September 5, 1991.

---

[10]This holding, however, does not affect the question whether lack of knowledge of the explosive agent constitutes an affirmative defense to the charge of possession of a bullet containing an explosive agent. (See J. Shinn's conc. opn. in *People* v. *Daniels, supra,* 118 Cal.App.2d 340, 345, and *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].)

*See footnote, *ante,* page 1396.

†Retired Associate Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.