[No. C032412. Third Dist. Oct. 24, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT EARL OLMSTED, Defendant and Appellant.

## COUNSEL

David Joseph Macher, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Carlos A. Martinez and Stan Cross, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DAVIS, Acting P. J.**—A jury found defendant Robert Earl Olmsted guilty of various crimes relating to his attempts to murder two peace officers, including possession of "ammunition which contains or consists of any fléchette dart . . . ." (Pen. Code, § 12020, subd. (a)(1)—count seven.)[1] The court sentenced defendant to an aggregate term of 231 years to life in state prison. Defendant received a consecutive term of 25 years to life for the possession of fléchette darts charged as count seven.

On appeal defendant challenges his conviction on count seven on the ground there is no substantial evidence that the items he possessed met the statutory definition of fléchette dart, in that the tail fins were not five-sixteenths of an inch long. (§ 12020, subd. (c)(6).) We agree and will reverse the conviction and sentence as to that count. Defendant is also entitled to an additional day of presentence custody credit and to have clerical errors in the abstract of judgment corrected. In all other respects we will affirm the judgment and sentence.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. Facts

The underlying facts are not in dispute. In April 1998, while seated in a van parked at a shopping center, defendant shot Deputy Sheriff Michael

---

[1]All undesignated statutory references are to the Penal Code.

Butler. Butler took cover and radioed for assistance. Defendant then fled, driving the van southbound on Watt Avenue, and crossed the center divider into the northbound lanes. Deputy Sheriffs Jaritt Beck and Judi Bly-Magaw sped northbound on Watt Avenue in separate vehicles in response to Butler's distress call.

Defendant's van sped toward Beck's patrol car and hit it head-on at high speed. The van caught on fire. When Deputy Bly-Magaw pulled defendant from the van, he told her that they needed to get away from the van because there was a bomb inside. Defendant was wearing body armor.

The fire set off thousands of rounds of ammunition which were inside the van, and a pipe bomb in the van exploded. The fire melted numerous firearms that were in the van, to wit, two shotguns, a rifle, a semiautomatic handgun and a revolver. A small engine muffler was attached to the handgun and functioned as a silencer.

Deputy Sheriff Robert Morgan, a member of the bomb squad, helped investigate the burned van's contents. Morgan testified that he found a shotgun barrel in the van that contained a number of small metal darts, each with three or four "little fins on the back end . . . ." The darts were situated in what had been the chamber area of the shotgun barrel, i.e., in a position to be fired.

Morgan said he was familiar with fléchette dart ammunition consisting of small metal darts with fins, such that the darts can be fired from the gun. It appeared here that the part of the barrel where a round would normally be placed to fire was destroyed in the fire, leaving the metal darts in the barrel.

Morgan measured the darts found in the van using a ruler. The darts had an overall length of one and one-sixteenths of an inch. The length of the fins on the darts was "approximately $\%_{32}$ of an inch." Morgan said "approximately" because his measurement was within $\frac{1}{32}$ of an inch. He agreed with the prosecutor's suggestion that the tail fin length could have been "$\frac{8}{32}$ or $\frac{12}{32}$[.]"[2] There was no other evidence regarding the length of the tail fins.

B. *Motion to Dismiss and Jury Instructions*

Defense counsel made an oral motion to dismiss count seven on the ground that the darts involved here did not have tail fins five-sixteenths of an

---

[2]If Morgan's tail fin measurement of approximately $\%_{32}$ of an inch were made to within $\frac{1}{32}$ of an inch, then it would be expected that the tail fin length could have been as much as $\frac{10}{32}$ of an inch, not $\frac{12}{32}$. It is not clear whether "$\frac{12}{32}$" is a typographical error in the record, or whether prosecutor Cleland misspoke in asking the question, or whether Morgan misunderstood the question, but in no event does the matter make a difference to our analysis.

inch long, as specified in the statute. (§ 12020, subd. (c)(6).) The trial court denied the motion because it interpreted the statute to include the word "approximately" with respect to the tail fin measurement as well as the overall length of the dart.

The court later instructed the jury that "a fléchette dart means a dart capable of being fired from a firearm and which measures approximately one-inch in length and which has tail fins which take up *approximately* 5/16 of an inch of the body of the dart." (Italics added.) The instruction essentially tracked the statutory language, except that the statute does not use the word "approximately" in relation to the tail fins.[3]

### C. *Convictions and Sentence*

The jury convicted defendant of the attempted premeditated murder of Deputy Butler (Pen. Code, §§ 664, 187—count one); attempted murder of Deputy Beck (§§ 664, 187—count two); being a felon in possession of a firearm (§ 12021, subd. (a)—count three); possession of a destructive device in a public place (§ 12303.2—count four); possession of materials for a destructive device (§ 12312—count five); possession of a firearm silencer (§ 12520—count six); and possession of fléchette dart ammunition (§ 12020, subd. (a)—count seven).

The jury also found true various sentence enhancements applicable to count 1 (§§ 12022.53, subd. (c), 12022.2, subd. (b)) and count two (§§ 12022, subd. (b)(1), 12022.2, subd. (b)).

Defendant waived his right to a jury trial on the prior conviction allegations. The court found it true that defendant had suffered two prior serious felony convictions for purposes of sentencing him under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12) and for purposes of an enhancement under section 667, subdivision (a).

The court sentenced defendant as follows: As to *count one*, 15 years to life, tripled to 45 years to life under the Three Strikes law, plus a 20-year enhancement under section 12022.53, subdivision (c) and a five-year enhancement pursuant to section 12022.2, subdivision (b); for *count two*, a consecutive term of 25 years to life under the Three Strikes law, plus a one-year enhancement under section 12022, subdivision (b)(1) and a five-year enhancement under section 12022.2, subdivision (b); as to *counts three,*

---

[3]Section 12020, subdivision (c)(6) provides: "As used in this section, a 'fléchette dart' means a dart, capable of being fired from a firearm, which measures approximately one inch in length, with tail fins which take up five-sixteenths of an inch of the body."

*four, five, six and seven,* respectively, five consecutive terms of 25 years to life; and a five-year enhancement under section 667, subdivision (a).

The court awarded defendant 425 days of custody credits based on 370 days' actual custody plus 55 days' local conduct credits.

DISCUSSION

A. *No Substantial Evidence Regarding Tail Fins*

 Defendant claims that section 12020, subdivision (c)(6), properly construed, applies the word "approximately" only to the overall dart length and not to the tail fin measurement. Based on that interpretation of the statute, he contends there is no substantial evidence that the tail fins of the fléchette darts involved here were five-sixteenths of an inch long. "[T]his is the short and long of it." (Shakespeare, Merry Wives of Windsor, act II, scene 2, line 62.) We agree with defendant on both points.

 First we address the statutory interpretation issue. Our fundamental concern is with legislative intent. (*Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) To determine intent, we begin with the words of the statute itself. (*Ibid.*) "[W]e turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 [87 Cal.Rptr.2d 205, 980 P.2d 912].) When the language is clear, we need not resort to indicia of legislative intent. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

 Section 12020, subdivision (c)(6) is unambiguous: "As used in this section, a 'fléchette dart' means a dart, capable of being fired from a firearm, which measures approximately one inch in length, with tail fins which take up five-sixteenths of an inch of the body." The word "approximately" refers solely to the length of the dart, *not* the length of the tail fins. No grammatically correct reading of the language yields the meaning urged by the Attorney General, i.e., that the word "approximately" applies also to the tail fin measurement.

Further support for our conclusion comes from our review of legislative history. The Legislature *originally* specified that the tail fin measurement was to be *approximate*, but later *deleted* the word "approximately" with regard to the tail fins.

Fléchette darts were prohibited—and defined—for the first time by an amendment to section 12020 enacted in 1976 and effective on January 1,

1977. (Stats. 1976, ch. 1140, §§ 2, 4, pp. 5179-5180, 5181-5182.) Pursuant to that law, former section 12020, subdivision (d)(5), provided: "As used in this section, a 'flechette dart' means a dart, capable of being fired from a firearm, which measures approximately one inch in length, with tail fins which take up *approximately* five-sixteenths inch of the body." (Stats. 1976, ch. 1140, § 2, p. 5180, italics added.) Thus, the original statute applied the word "approximately" to the tail fin measurement.

Chapter 1140 of the Statutes of 1976 resulted from the passage of Senate Bill No. 1582, which contained two different versions of the definition of "fléchette dart." (Stats. 1976, ch. 1140, §§ 2, 3, pp. 5179-5180, 5180-5181.) The version quoted in the preceding paragraph of this opinion—using the word "approximately" with regard to the length of the tail fins—was in *section 2* of chapter 1140. (Stats. 1976, ch. 1140, § 2, pp. 5179-5180.) Section 2 remained operative only until the operative date of Senate Bill No. 42, at which time section 12020 was "further amended in the form set forth in Section 3 of this act to incorporate the changes in Section 12020 proposed by Senate Bill No. 42." (Stats. 1976, ch. 1140, § 4, pp. 5181-5182.)

Senate Bill No. 42, at chapter 1139 of the Statutes of 1976, became operative on July 1, 1977. (Stats. 1976, ch. 1139, § 351.5, p. 5176.) *Section 3* of chapter 1140 deleted the word "approximately" with respect to the tail fin measurement, but made no other changes in the definition. (Stats. 1976, ch. 1140, § 3, pp. 5180-5181.)[4] As a result, the version of the definition found in section 2—using "approximately" as to the tail fins—was operative only from January 1, 1977, through June 30, 1977, after which the further amended definition without the word "approximately" modifying the tail fin measurement became the law. It is this definition that is applicable to defendant.

■ In interpreting statutory language, a court must not "insert what has been omitted, or . . . omit what has been inserted." (Code Civ. Proc., § 1858.) This is particularly true where, as here, the term in question previously appeared in the statute but was subsequently omitted. ■ We decline to insert a word the Legislature has removed.

We are aware of the possibility that the omission of the word "approximately" in section 3 of chapter 1140 of the Statutes of 1976 was unintentional and resulted from a drafting error. As noted, section 12020 (as amended by § 2 of ch. 1140) was to be further amended (by § 3 of ch. 1140)

---

[4]Section 3 of chapter 1140 stated, at page 5181: "As used in this section, a 'flechette dart' means a dart, capable of being fired from a firearm, which measures approximately one inch in length, with tail fins which take up five-sixteenths of an inch of the body."

to incorporate the changes to section 12020 contained in Senate Bill No. 42. (Stats. 1976, ch. 1140, § 4, pp. 5181-5182.) However, Senate Bill No. 42 said nothing at all regarding fléchette darts, a topic addressed solely in Senate Bill No. 1582.

Rather, Senate Bill No. 42 expressly amended only those portions of former section 12020 pertaining to sentencing for various offenses, which it did by deleting the phrase "for not less than one year nor more than three years" from former subdivisions (a) and (c). (Stats. 1976, ch. 1139, § 302, pp. 5160-5161; Stats. 1976, ch. 1140, §§ 2, 3, pp. 5179-5180, 5180-5181.)[5] The fact remains, however, that the Legislature actually deleted the word "approximately" from the part of the definition of fléchette dart that pertains to the tail fin measurement.

We cannot say with confidence that the omission of that word was a drafting error. Its absence could represent a rational choice to limit the scope of the statute. If the omission of "approximately" from the definition of the tail fin measurement was not intended, then the Legislature is free to amend section 12020, subdivision (c)(6) by reinserting the word. It is not our role as a court to amend that statute. Therefore, we conclude that the word "approximately" in the definition applies only to the overall dart length, not to the tail fin length.

We now turn to the substantial evidence question. ■ "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

"Substantial" is a term that " 'clearly implies that such evidence must be of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (*People v. Bassett* (1968) 69 Cal.2d 122, 138-139 [70 Cal.Rptr. 193, 443 P.2d 777], quoting *Estate of Teed* (1952) 112 Cal.App.2d 638, 644 [247 P.2d 54].)

■ Deputy Morgan's trial testimony is not substantial evidence that the tail fins took up five-sixteenths of an inch of the body of at least one dart

---

[5]Senate Bill No. 42 was enacted as the Uniform Determinate Sentencing Act of 1976. (Stats. 1976, ch. 1139, § 350, p. 5175.) It is also referred to as the "DSL," or determinate sentencing law. (See *In re Stanworth* (1982) 33 Cal.3d 176, 177-178 [187 Cal.Rptr. 783, 654 P.2d 1311].)

found in defendant's van. He stated the tail fin lengths were "approximately 9/32 of an inch." This is less than five-sixteenths of an inch. Morgan also said the length could have been as little as "8/32" (equivalent to 4/16, also under the length required by the statute) or as much as "10/32" (or 5/16) of an inch.

In summary, Deputy Morgan gave a range of measurements, some of which did not meet the statutory requirement, and he could not say whether the tail fins actually satisfied the statutory requirement. In light of the evidence, it would be unreasonable to conclude that the tail fins' length was actually 5/16 of an inch, as opposed to "8/32" or "9/32" of an inch. It appears Morgan's best estimate was 9/32 of an inch, which is too short to qualify the objects as "fléchette darts" under section 12020, subdivision (c)(6). Accordingly, we reverse the conviction and sentence as to count 7.[6]

### B. *Credits*

Defendant also contends that the trial court made a one-day error in determining his presentence actual custody. The Attorney General concedes the error and agrees it should be corrected on appeal.

The concession is well taken. Defendant is entitled to a total of 426 days of custody credits, comprised of 371 days of actual local time and 55 days of local conduct credits.

### C. *Correction of Abstract of Judgment*

There are several clerical errors in the abstract of judgment filed April 15, 1999. We shall order the matter remanded to the trial court so that the errors can be corrected by way of an amended abstract of judgment.

As to counts two, three, four, five and six, we observe that the trial court mistakenly placed an "X" in the boxes beneath the heading "Concurrent." As reflected in the sentencing transcript, however, the court imposed *consecutive* terms on those counts.

Further, as to count one, the abstract of judgment shows one enhancement of 25 years under section 12022.53, subdivision (c). This is in error. The actual findings and terms as to the enhancements for count one were a

---

[6]We reject the Attorney General's suggestion that the conviction can be upheld on the ground that the jury could have reasonably concluded that the tail fins were five-sixteenths of an inch in length before the van fire. Such a conclusion would rest on speculation, since Deputy Morgan did not testify that the darts were damaged in any way by the fire.

*20-year enhancement under section 12022.53, subdivision (c),* and a *five-year enhancement under section 12022.2, subdivision (b).*

## DISPOSITION

The conviction as to count seven is reversed. Defendant shall receive one additional day of credits. In all other respects, the judgment is affirmed. The matter is remanded to the trial court for the preparation and filing of an amended abstract of judgment in accordance with this opinion. A copy thereof shall then be transmitted to the Department of Corrections.

Morrison, J., and Callahan, J., concurred.