[No. C033845. Third Dist. Nov. 14, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES PATRICK TAYLOR, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through V.

**COUNSEL**

Susan K. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson

and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, P. J.**—Among the crimes of violence, illicit drugs, and illegal possession of weapons of which defendant James Patrick Taylor was convicted is the possession of a cane sword. (Pen. Code, § 12020, subd. (a); further section references are to the Penal Code unless otherwise specified.)

In the published portion of this opinion, we agree with defendant that the trial court erred in failing to instruct the jury that, to be guilty of possessing a cane sword, a person must know the cane actually conceals a sword. As we will explain, the application of factors considered in determining whether the Legislature intended a criminal statute to impose liability without proof of scienter leads us to conclude that possession of a cane sword is not a strict liability offense. In order to protect against the significant possibility of punishing innocent possession by one who believes he or she simply has an ordinary cane, we infer the Legislature intended a scienter requirement of knowledge that the cane conceals a sword.

In the unpublished parts of our opinion, we reject defendant's remaining claims of error. Accordingly, we shall reverse the cane sword conviction and otherwise affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

When officers searched the residence occupied by defendant, a convicted felon, they found 72 grams of methamphetamine, 102.8 grams of marijuana, 49 grams of psilocybin mushrooms, a firearm, and $8,150 in cash.

Six months later, during the search of a storage room leased by defendant, officers found marijuana and psilocybin mushrooms, numerous firearms and types of ammunition, and a cane sword. When defendant was arrested that day, he had a small amount of marijuana in his sock.

Three and a half months later, while defendant was out on bail, a patrol officer saw defendant and Edward M. (Edward) on the ground in a bear hug in front of an apartment complex. Edward was covered in blood. Defendant jumped up and exclaimed: "He beat up my girlfriend." By the time Edward was examined at a hospital, he had lost 500 cc's of blood and complained of pain in his face, eyes and hand. He also had difficulty seeing. The treating

physician testified that Edward had a large, complex laceration on the bridge of his nose, which was swollen and bloody, acute nose fractures, corneal abrasions, bruises on his upper and lower eyelids, and a cervical strain in his neck. In the physician's opinion, the injuries had occurred only a few hours before the examination.

In case No. 99321, defendant was convicted of three counts of possessing controlled substances (methamphetamine and psilocybin) for sale (Health & Saf. Code, § 11378), with an armed allegation as to two counts (§ 12022, subd. (c)); two counts of possessing marijuana for sale (Health & Saf. Code, § 11359), with armed allegations (§ 12022); two counts of being a convicted felon in possession of a firearm (§ 12021, subd. (a)); being a convicted felony in possession of ammunition (§ 12316, subd. (b)(1)); and possessing a cane sword (§ 12020, subd. (a)). In case No. 991011, defendant was convicted of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)), with a great bodily injury enhancement (§ 12022.7, subd. (a)), and on-bail enhancement (§ 12022.1). He received an aggregate term of 15 years in state prison.

DISCUSSION

I–V*

. . . . . . . . . . . . . . . . . . . . . . . .

VI

Section 12020, subdivision (a) provides in pertinent part: "Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: [¶] (1) . . . possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any short-barreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, *any cane sword*, any shobi-zue, any air gauge knife, any writing pen knife, any metal military practice handgrenade or metal replica handgrenade, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag." (Italics added.)

*See footnote, *ante*, page 933.

Thus, included in this menagerie of unusual, sophisticated weapons, some with mysterious and evil-sounding names, is a cane sword, which is defined as "a cane, swagger stick, stick, staff, rod, pole, umbrella, or similar device, having concealed within it a blade that may be used as a sword or stiletto." (§ 12020, subd. (c)(15).) From outward appearance, a cane sword seems to be a common walking cane. (Traditional Curved Sword Cane (2001) <http://www.graceworld.com/swordcanes/gwuc727b.htm> [as of Nov. 14, 2001].) Its unlawful component—the sword blade—is neatly concealed inside the cane, with a fitting and seal keeping the curved handle locked in position while the cane is used for walking. The blade is ejected with the twist of the handle. (*Ibid.*)

■ Defendant contends that an element of the crime of possessing a cane sword in violation of section 12020, subdivision (a)(1) is knowledge that the cane conceals a sword. Accordingly, he argues, his conviction for violating that section must be reversed because the trial court did not instruct the jury on the knowledge element of the crime and because the prosecutor failed to present evidence from which the jurors could infer defendant had the requisite knowledge that the cane he possessed concealed a sword. Although we disagree with the second point, we find merit in the first.

■ As acknowledged by our dissenting colleague, "the requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it." (*In re Jorge M.* (2000) 23 Cal.4th 866, 872 [98 Cal.Rptr.2d 466, 4 P.3d 297].) This generally is so because " ' "[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." . . .' [Citation.] In other words, there must be a union of act and wrongful intent, or criminal negligence. [Citations.] 'So basic is this requirement that it is an invariable element of every crime unless excluded expressly or by necessary implication.' " (*People v. Coria* (1999) 21 Cal.4th 868, 876 [89 Cal.Rptr.2d 650, 985 P.2d 970].)

■ There is, however, an exception for certain types of penal laws, often referred to as public welfare offenses, for which the Legislature has intended that proof of scienter or wrongful intent is not necessary for conviction. (*In re Jorge M., supra,* 23 Cal.4th at p. 872; *People v. Coria, supra,* 21 Cal.4th at p. 876.) "Such offenses generally are based upon the violation of statutes which are purely regulatory in nature and involve widespread injury to the public. [Citation.] 'Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal

sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement.' [Citation.]" (*People v. Coria, supra,* 21 Cal.4th at pp. 876-877; accord, *In re Jorge M., supra,* 23 Cal.4th at p. 872.)

■ Where legislative intent is not readily discerned from the text of a statute, the California Supreme Court has applied a framework that considers seven factors "courts have commonly taken into account in deciding whether a statute should be construed as a public welfare offense [for which the Legislature intended guilt without proof of scienter or wrongful intent]: (1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime ('Other things being equal, the greater the possible punishment, the more likely some fault is required'); (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts ('The harder to find out the truth, the more likely the legislature meant to require fault in not knowing'); (6) the difficulty prosecutors would have in proving a mental state for the crime ('The greater the difficulty, the more likely it is that the legislature intended to relieve the prosecution of that burden so that the law could be effectively enforced'); (7) the number of prosecutions to be expected under the statute ('The fewer the expected prosecutions, the more likely the legislature meant to require the prosecuting officials to go into the issue of fault')." (*In re Jorge M., supra,* 23 Cal.4th at p. 873, quoting 1 LaFave & Scott, Substantive Criminal Law (1986) § 3.8(a), pp. 342-344.)

■ Considering these factors, the dissent concludes "the Legislature did not intend that the prosecution prove defendant knew the characteristics that bring the weapon within the proscription of section 12020[, subdivision] (a)(1)," i.e., that the cane concealed a sword. In our colleague's view, it is a defendant's burden to raise as a defense that he or she did not know the unlawful characteristic of the cane. (Conc. & dis. opn., *post,* at p. 952.) We cannot agree.

In *In re Jorge M., supra,* 23 Cal.4th 866, the Supreme Court interpreted section 12280, subdivision (b), which, among other things, prohibits the possession of an unregistered "assault weapon" as defined in sections 12276 and 12276.1. The specific weapon at issue in that case was an "SKS-45 semiautomatic rifle with a detachable 'banana clip' magazine." (*In re Jorge M., supra,* 23 Cal.4th at p. 870.) Considering the seven factors that courts

commonly have taken into account in deciding whether a statute should be construed as a public welfare offense for which the Legislature intended guilt without "any proof of scienter or wrongful intent" (*id*. at pp. 872-873), the court concluded that the assault weapon statute is *not* a strict liability crime. (*Id*. at pp. 869, 887.) Nevertheless, the court held that, due to the gravity of the public safety threat addressed by the statute and the need for effective enforcement of the law, the assault weapon statute does not require actual knowledge of the weapon's unlawful characteristics. Rather, guilt can be established by proof that the person charged with unlawfully possessing an assault weapon "*knew or reasonably should have known* the firearm possessed the characteristics [that make it an assault weapon]." (*Id*. at pp. 869-870, 887.)

Four of the factors considered by the Supreme Court appear to have weighed most heavily in its decision: the serious threat of harm posed by the unlawful possession of semiautomatic firearms in the form of assault weapons (factor four); the potential difficulty of routinely proving actual knowledge on the part of defendants in the substantial number of prosecutions to be expected under the assault weapon statute (factors six and seven); and the opportunity of the defendant to have ascertained the true facts about the weapon (factor five). (*In re Jorge M., supra,* 23 Cal.4th at pp. 873, 887.) Of significance to its holding is the Supreme Court's observation that, because of the general principle that all persons are obligated to learn of and comply with the law, it ordinarily is reasonable to conclude that, absent "exceptional cases in which the salient characteristics of the firearm are extraordinarily obscure, or the defendant's possession of the gun was so fleeting or attenuated as not to afford an opportunity for examination," a person who knowingly possesses a semiautomatic firearm reasonably would investigate and determine whether the gun's characteristics make it an assault weapon. (*Id*. at p. 885.)

None of these factors applies to a cane sword.

Common sense indicates that a cane sword does not present the serious threat of harm posed by the unlawful possession of a semiautomatic assault weapon (factor four). And common experience indicates that there will not be a substantial number of prosecutions for cane sword possession such that prosecutors will have difficulty routinely proving actual knowledge of the unlawful characteristic of a cane sword (factors six and seven). For example, in this case, the location of the cane sword among the cache of other weapons unlawfully possessed by the able-bodied defendant was circumstantial evidence of his knowledge of the cane sword's unlawful characteristic.

It also is very significant that, unlike a semiautomatic firearm the outward nature of which reasonably would lead the person possessing it to investigate

and determine whether the firearm has the characteristics of an assault weapon, a cane sword is an object the unlawful nature of which is extraordinarily, and intentionally, obscure (factor five). As we have noted, from outward appearance, a traditional curved cane sword seems to be a common walking cane. Its unlawful component—the sword blade—is neatly concealed inside the cane, with a fitting and seal keeping the curved handle locked in position while the cane is used for walking. The blade is ejected with the twist of the handle.

Certainly, the unlawful characteristic of a cane sword is far more obscure than that of a dirk or dagger, the possession of which concealed upon one's person also is prohibited by section 12020, subdivision (a).

■ "Because the dirk or dagger portion of section 12020 criminalizes ' "traditionally lawful conduct," ' [possessing a knife]," the California Supreme Court has construed that statute to "contain a 'knowledge' element." (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331-332 [96 Cal.Rptr.2d 735, 1 P.3d 52]; citing *People v. Coria, supra,* 21 Cal.4th at pp. 880-881.)[1] "Thus, to commit the offense, a defendant must . . . have the requisite *guilty mind*: that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' (§ 12020, subds. (a), (c)(24).) A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty of violating section 12020." (*People v. Rubalcava, supra,* 23 Cal.4th at p. 332, fn. omitted.)

■ So it should be with a cane sword due to the obscure nature of its unlawful characteristic. In order to protect against the significant possibility of punishing innocent possession by one who believes he or she simply has an ordinary cane, we infer the Legislature intended a scienter requirement of actual knowledge that the cane conceals a sword.

The three other factors identified by the Supreme Court support our conclusion. The rationales of *In re Jorge M., supra,* 23 Cal.4th 866, and *People v. Rubalcava, supra,* 23 Cal.4th 322, suggest that the context of the statute (factor one) favors a mens rea requirement for the possession of a cane sword, as it does for the possession of a dirk or dagger. And, as acknowledged by the dissent, the general provisions on mens rea and strict

---

[1]In *People v. Coria, supra,* 21 Cal.4th 868, the Supreme Court noted that engaging in chemical synthesis ordinarily is lawful conduct and that unknowing participation in the process of manufacturing methamphetamine is not inherently unlikely. Accordingly, the court inferred that the Legislature intended that, to be guilty of manufacturing methamphetamine, a person must have knowledge of the unlawful characteristic of the substance being produced. (*Id.* at pp. 880-881.)

liability crimes (factor two) and the severity of punishment (factor three) support a mens rea requirement.

Since the trial court did not instruct the jury that actual knowledge that the cane conceals a sword is an element of the crime and the People make no effort to demonstrate how the error may have been harmless, we shall reverse defendant's conviction for possessing a cane sword.

### DISPOSITION

The conviction for possessing a cane sword is reversed. In all other respects, the judgment is affirmed. The trial court is directed to amend the abstract of judgment accordingly and to reflect that the conviction in count 8 was for violation of section 12021, subdivision (a)(1), not section 12020, subdivision (a)(1). The court is further directed to forward a certified copy of the amended abstract to the Department of Corrections.

Davis, J., concurred.

**MORRISON, J.,** Concurring and Dissenting.—I respectfully dissent from part VI of the opinion.

I part company with the analysis of the majority in two respects. First, I accord greater weight to the stare decisis effect of several appellate court decisions that have held that the possession of weapons listed in Penal Code section 12020, subdivision (a)(1) is a strict liability offense, particularly in light of the Legislature's failure to amend the statute to clarify the required mens rea. Were we writing on a clean slate, I would be more inclined to find a mens rea requirement in Penal Code section 12020, subdivision (a)(1). (See *People v. Westlund* (2001) 87 Cal.App.4th 652 [104 Cal.Rptr.2d 712] [violation of Pen. Code, § 12520, possession of a silencer, requires knowledge of the nature of the silencer].) But here we are faced with abundant case law holding Penal Code section 12020, subdivision (a)(1) has no knowledge requirement.

Second, I believe the factors set forth in *In re Jorge M.* (2000) 23 Cal.4th 866 [98 Cal.Rptr.2d 466, 4 P.3d 297] (*Jorge M.*) must be applied to all the weapons listed in subdivision (a)(1) of Penal Code section 12020 as a group, rather than to a cane sword individually. The mens rea requirement cannot differ as to items listed in the same subdivision. By including cane swords with obviously dangerous weapons, such as machine guns and hand grenades, the Legislature determined that possession of such weapons should be treated differently from the possession or concealment of other weapons, such as assault weapons or dirks and daggers.

Penal Code section 12020, subdivision (a)(1) (hereafter section 12020(a)(1)) provides: "Any person in this state who does any of the following is punishable by imprisonment in a county jail not exceeding one year or in the state prison: [¶] (1) Manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any cane gun or wallet gun, any undetectable firearm, any firearm which is not immediately recognizable as a firearm, any camouflaging firearm container, any ammunition which contains or consists of any fléchette dart, any bullet containing or carrying an explosive agent, any ballistic knife, any multiburst trigger activator, any nunchaku, any short-barreled shotgun, any short-barreled rifle, any metal knuckles, any belt buckle knife, any leaded cane, any zip gun, any shuriken, any unconventional pistol, any lipstick case knife, any cane sword, any shobi-zue, any air gauge knife, any writing pen knife, any metal military practice handgrenade or metal replica handgrenade, or any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sap, or sandbag." Subdivision (c)(15) defines a cane sword as "a cane, swagger stick, stick, staff, rod, pole, umbrella, or similar device, having concealed within it a blade that may be used as a sword or stiletto."

The statute itself is silent on the degree of knowledge required to violate section 12020(a)(1). This silence is not dispositive, as "the requirement that, for a criminal conviction, the prosecution prove some form of guilty intent, knowledge, or criminal negligence is of such long standing and so fundamental to our criminal law that penal statutes will often be construed to contain such an element despite their failure expressly to state it." (*Jorge M., supra,* 23 Cal.4th 866, 872.) In general, " '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' [Citations.]" (*People v. Simon* (1995) 9 Cal.4th 493, 519 [37 Cal.Rptr.2d 278, 886 P.2d 1271].)

There are, however, certain penal laws, known as public welfare offenses, that do not require any proof of scienter or intent for conviction. "Under many statutes enacted for the protection of the public health and safety, e.g., traffic and food and drug regulations, criminal sanctions are relied upon even if there is no wrongful intent. These offenses usually involve light penalties and no moral obloquy or damage to reputation. Although criminal sanctions are relied upon, the primary purpose of the statutes is regulation rather than punishment or correction. The offenses are not crimes in the orthodox sense, and wrongful intent is not required in the interest of enforcement. [Citations.]" (*People v. Vogel* (1956) 46 Cal.2d 798, 801, fn. 2 [299 P.2d 850].)

Recently, the California Supreme Court determined whether a statute outlawing the possession of certain assault weapons had a mens rea requirement or was a strict liability offense. In *Jorge M., supra,* 23 Cal.4th 866, the

high court held that Penal Code section 12280, subdivision (b) required proof of defendant's actual knowledge or negligent failure to know of the weapon's salient characteristics. The statute provides in pertinent part: "[A]ny person who, within this state, possesses any assault weapon, except as provided in this chapter, is guilty of a public offense and upon conviction shall be punished by imprisonment in the state prison, or in a county jail, not exceeding one year." (Pen. Code, § 12280, subd. (b).) The court found that whether the statute was a public welfare offense was not obvious. On the one hand, it was aimed at protecting the public by regulating and restricting assault weapons. (*Jorge M., supra*, 23 Cal.4th at p. 872.) On the other hand, it was a wobbler that could be punished as a felony, so the penalty was not light. (*Id.* at p. 873.)

The high court then analyzed in turn seven factors courts have considered in deciding whether a statute should be construed as a public welfare offense. These factors are: "(1) the legislative history and context; (2) any general provision on mens rea or strict liability crimes; (3) the severity of the punishment provided for the crime ('Other things being equal, the greater the possible punishment, the more likely some fault is required'); (4) the seriousness of harm to the public that may be expected to follow from the forbidden conduct; (5) the defendant's opportunity to ascertain the true facts ('The harder to find out the truth, the more likely the [L]egislature meant to require fault in not knowing'); (6) the difficulty prosecutors would have in proving a mental state for the crime ('The greater the difficulty, the more likely it is that the [L]egislature intended to relieve the prosecution of that burden so that the law could be effectively enforced'); (7) the number of prosecutions to be expected under the statute ('The fewer the expected prosecutions, the more likely the [L]egislature meant to require the prosecuting officials to go into the issue of fault')." (*Jorge M., supra,* 23 Cal.4th at p. 873.)

Although, as I explain below, section 12020(a)(1) has been interpreted as a strict liability offense, I find the answer not so obvious, and thus will apply the seven factors test set forth in *Jorge M., supra,* 23 Cal.4th 866.

*Statute's History and Context*

Penal Code section 12020 was adopted in 1953 as part of the Dangerous Weapons Control Law (Pen. Code, §§ 12000-12520). (Stats. 1953, ch. 36, § 1, p. 653.) The original statute contained a shorter list of weapons that could not be manufactured, imported, sold, given, lent or possessed. It was limited to "any instrument or weapon of the kind commonly known as a

blackjack, slung shot, billy, sandclub, sandbag, or metal knuckles[.]" (*Ibid.*) The statute has been amended numerous times over the years. Amendments have added weapons to the list of prohibited weapons (e.g., Stats. 1961, ch. 996, § 1, p. 2645 [adding sawed-off shotgun]; Stats. 1988, ch. 512, § 1, p. 1930 [adding plastic firearms, belt buckle knives, leaded canes, zip guns, shurikens, unconventional pistols, lipstick case knives, cane swords, shobi-zues, air gauge knives, writing pen knives and saps]), and changed the definitions of weapons (e.g., Stats. 1993, ch. 357, § 1, p. 2155 and Stats. 1995, ch. 128, § 2 [both defining dirk or dagger]). The opening language that prohibits possession of the weapons listed in section 12020(a)(1) has not changed.

The issue of the required mens rea has been addressed by the courts in interpreting the statute. In *People v. Corkrean* (1984) 152 Cal.App.3d 35 [199 Cal.Rptr. 375], the defendant was found guilty of possession of a machine gun in violation of Penal Code section 12220. The appellate court concluded that knowledge that the weapon possessed is an automatic is not an element of the offense. At the time, Penal Code section 12220 provided that " '[a]ny person . . . who within this state . . . possesses or knowingly transports any firearms of the kind commonly known as a machine gun, . . . is guilty of a public offense . . .' " and "machine gun" was defined to include any weapon that shoots automatically more than one shot, without manual reloading. (*People v. Corkrean, supra,* 152 Cal.App.3d at p. 37.) The *Corkrean* court examined other statutes in the Dangerous Weapons Control Law and concluded that the Legislature's omission of the word "knowingly" from the possession of a machine gun, while using that term to describe other offenses, was indicative of an intent to omit the mens rea requirement. (*Id.* at pp. 39-40.) Moreover, in *People v. Daniels* (1953) 118 Cal.App.2d 340 [257 P.2d 1038], the court held knowledge that the firearm was a machine gun was not an element of the former Machine Gun Law. Since the Legislature was presumed to be aware of this interpretation and had not amended the statute to require knowledge, the *Corkrean* court concluded the Legislature agreed with the *Daniels* analysis. (*People v. Corkrean, supra,* 152 Cal.App.3d at p. 40.)

*People v. Corkrean, supra,* 152 Cal.App.3d 35, was followed by *People v. Azevedo* (1984) 161 Cal.App.3d 235 [207 Cal.Rptr. 270], where the defendant was convicted of possession of a sawed-off shotgun in violation of Penal Code section 12020. The *Azevedo* court held that the absence of the word "knowingly" in section 12020 "reflects the Legislature's intent that possessing a sawed-off shotgun is a crime even though the defendant does not know the dimensions of the weapon or reasonably believes those dimensions bring

the weapon within lawful limits." (*People v. Azevedo, supra*, 161 Cal.App.3d at p. 241.) The court went on: "[T]here are numerous instances where culpability has been completely eliminated as a necessary element of criminal conduct. [Citation.] The case before us is one of those instances where it is evident that the public policy considerations relating to the substantial harm associated with possessing a dangerous or deadly weapon prompted the Legislature to delete the need for a person to know the contraband character of that weapon. It is not a heavy burden for a person who knowingly possesses a sawed-off shotgun to first determine the dimensions of that weapon or otherwise possess it at his or her own peril." (*Ibid.*)

In *People v. Valencia* (1989) 214 Cal.App.3d 1410 [263 Cal.Rptr. 301], the defendant was convicted of possession of a sawed-off shotgun in violation of Penal Code section 12020, subdivision (a). Following *People v. Corkrean, supra,* 153 Cal.App.3d 35, and *People v. Azevedo, supra,* 161 Cal.App.3d 235, the court ruled that knowledge of the illegal character of the weapon was not an element of the offense. The *Valencia* court distinguished narcotics cases that require knowledge of the contraband character of the substance possessed. The court reasoned controlled substances often appear to be entirely innocent, but that was not true of dangerous weapons. "Sawed-off shotguns, automatic rifles, and other patently dangerous weapons present a wholly different situation. They are not ambiguous substances. They are, as Justice Douglas said of hand grenades, 'highly dangerous offensive weapons.' (*United States* v. *Freed* (1971) 401 U.S. 601, 609 [28 L.Ed.2d 356, 362, 91 S.Ct. 1112].)" (*People v. Valencia, supra*, 214 Cal.App.3d at p. 1415.) Based on this rationale, the *Valencia* court concluded that the Legislature "could rationally conclude that anyone who sees such a device can and should be assumed to recognize its potentially lethal character; that anyone proposing to take possession of such a device must ascertain whether such possession is legal; and that anyone taking possession without confirming the legal right to do so runs the risk that his or her conduct will be punished as a felony." (*Id.* at p. 1416.)

In *People v. Lanham* (1991) 230 Cal.App.3d 1396 [282 Cal.Rptr. 62], the defendant was convicted of possession of a bullet that carries or contains an explosive agent in violation of Penal Code section 12020, subdivision (a). The *Lanham* court followed *People v. Corkrean, supra,* 152 Cal.App.3d 35, and *People v. Valencia, supra,* 214 Cal.App.3d 1410, in concluding that the Legislature was aware of the decision in *People v. Daniels, supra,* 118 Cal.App.2d 340, when it enacted the prohibition on possession of such bullets. The *Daniels* court had concluded that the Legislature's selective use of the term "knowingly" in weapons possession statutes reflected an intent to

distinguish " 'between possessory and other offenses requiring knowledge, and possessory offenses punishable without regard to the defendant's awareness of the character of the item possessed.' [Citation.]" (*People v. Lanham, supra*, 230 Cal.App.3d at p. 1403, fn. omitted.)

Thus, an unbroken line of appellate court decisions has held that section 12020(a)(1) is a strict liability offense. The Legislature has not responded to this case law by amending the statute to add a mens rea requirement.

More recently, however, in interpreting subdivision (a)(4) of Penal Code section 12020, which prohibits carrying a concealed dirk or dagger, rather than mere possession, the Supreme Court held it was not a strict liability offense. (*People v. Rubalcava* (2000) 23 Cal.4th 322, 331 [96 Cal.Rptr.2d 735, 1 P.3d 52].) "Because the dirk or dagger portion of section 12020 criminalizes ' "traditionally lawful conduct," ' we construe the statute to contain a 'knowledge' element. [Citation.] Thus, to commit the offense, a defendant must still have the requisite *guilty mind*; that is, the defendant must knowingly and intentionally carry concealed upon his or her person an instrument 'that is capable of ready use as a stabbing weapon.' [Citation.] A defendant who does not know that he is carrying the weapon or that the concealed instrument may be used as a stabbing weapon is therefore not guilty of violating section 12020." (*Id.* at pp. 331-332, fn. omitted.)

In *Jorge M.*, the court concluded that the Court of Appeal decisions that predated the adoption of Penal Code section 12280, subdivision (b) were not compelling evidence that the Legislature intended section 12280, subdivision (b) to lack a scienter requirement. (*Jorge M., supra*, 23 Cal.4th at p. 877.) This was so for two reasons. First, the precedential history was not clear and definitive; the Supreme Court had not spoken on the issue, but had suggested there was a knowledge requirement in other similar contexts. (*Ibid.*) Second, the Legislature may have believed there was a significant difference between deadly weapons such as machine guns and sawed-off shotguns, which are easily identifiable, and prohibited assault weapons, which may not be. (*Id.* at p. 878.)

The minor in *Jorge M.* argued the machine gun cases should be reexamined in light of *Staples v. United States* (1994) 511 U.S. 600 [114 S.Ct. 1793, 128 L.Ed.2d 608], which found a knowledge requirement in the federal ban on machine guns, and that all of the weapon possession cases not requiring knowledge were suspect in light of the reasoning of *Staples* and *People v. Simon, supra,* 9 Cal.4th 493, that a mens rea requirement in criminal statutes

is the rule and strict liability the exception. (*Jorge M., supra*, 23 Cal.4th at p. 877, fn. 7.) The court declined to reexamine this line of cases. It noted, however, that important considerations come into play when a court is asked to modify an existing judicial interpretation of a statute. (*Ibid.*) The court cited *Patterson v. McLean Credit Union* (1989) 491 U.S. 164, 172-173 [109 S.Ct. 2363, 2370, 105 L.Ed.2d 132, 148], which stated: "Considerations of *stare decisis* have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and [the Legislature] remains free to alter what we have done. [Citations.]"

I find the factor of the history and context of the statute strongly favors strict liability. The Legislature has classified certain weapons, including cane swords as well as hand grenades and machine guns, as inherently dangerous and subject to an outright prohibition on possession. Further, I am mindful of the important considerations of stare decisis in this area of statutory interpretation.

I recognize, however, that the stare decisis effect is not dispositive. "It is a well-established principle of statutory construction that when the Legislature amends a statute without altering portions of the provision that have previously been judicially construed, the Legislature is presumed to have been aware of and to have acquiesced in the previous judicial construction. Accordingly, reenacted portions of the statute are given the same construction they received before the amendment." (*Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) The presumption that legislative inaction is legislative acquiescence, however, is not conclusive as there can be many reasons why the Legislature failed to act. (*County of Los Angeles v. Workers' Comp. Appeals Bd.* (1981) 30 Cal.3d 391, 403-404 [179 Cal.Rptr. 214, 637 P.2d 681].) "In the area of statutory construction, an examination of what the Legislature has done (as opposed to what it has left undone) is generally the more fruitful inquiry. '[L]egislative inaction is " 'a weak reed upon which to lean' " . . . .' [Citation.]" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873].)

The cases finding no knowledge requirement are arguably inconsistent with the California Supreme Court's latest decisions. They did not analyze the question in the context that " '[t]he existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence.' [Citations.]" (*People v. Simon, supra*, 9 Cal.4th at p. 519.) Nor did they apply the seven-factor analysis set forth in *Jorge M.* in

concluding section 12020(a)(1) was a strict liability offense. Moreover, the machine gun cases rely on the fact that the statute required knowing transportation, but not knowing possession. (*People v. Corkrean, supra,* 152 Cal.App.3d 35, 39; *People v. Daniels, supra,* 118 Cal.App.2d 340, 344.) While the Dangerous Weapons Control Law uses "knowingly" in some provisions (e.g., Pen. Code, §§ 12034, 12320, 12321, 12420), but not in others, such as section 12020, the Supreme Court found this no impediment to finding a mens rea requirement for carrying a concealed dirk or dagger in *People v. Rubalcava, supra,* 23 Cal.4th 322, 331-332. In short, the California Supreme Court has cast doubt on the continued vitality of the machine gun and sawed-off shotgun line of cases.

### General Provision on Mens Rea

Section 20 provides: "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." While this rule is not inflexible—public welfare offenses are the principal exception—the *Jorge M.* court found it to "establish a presumption against criminal liability without mental fault or negligence, rebuttable only by compelling evidence of legislative intent to dispense with mens rea entirely. [Citations.]" (*Jorge M., supra,* 23 Cal.4th at p. 879.) This factor favors a finding of a mens rea requirement.

### Severity of Punishment

Section 12020(a)(1) is an alternative felony/misdemeanor. As such, it is punished as a felony unless charged as a misdemeanor or reduced to a misdemeanor by the sentencing court. (Pen. Code, § 17, subd. (b).) The felony sentence is 16 months, two years, or three years. (Pen. Code, § 18.)

The United States Supreme Court has emphasized that the severe punishment of a felony suggests the Legislature did not intend to eliminate the mens rea requirement. (*Staples v. United States, supra,* 511 U.S. 600, 618 [114 S.Ct. 1793, 1806-1807, 128 L.Ed.2d 608, 624].) This factor, therefore, favors finding a mens rea requirement.

### Seriousness of Harm to the Public

While the public harm caused by cane swords is undoubtedly small, this factor must be considered and applied to all of the weapons listed in section 12020(a)(1). In enacting Penal Code section 12020, "[t]he Legislature obviously sought to condemn weapons common to the criminal's arsenal; it

meant as well 'to outlaw instruments which are ordinarily used for criminal and unlawful purposes.' [Citations.] The Legislature's understandable concern with the promiscuous possession of objects dangerous to the lives of members of the public finds manifestation in section 12020. Easy access to instruments of violence may very well increase the risk of violence." (*People v. Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100].) The prohibition against possessing the weapons listed in subdivision (a)(1) is thus distinguishable from the prohibition against carrying a concealed dirk or dagger, which "criminalizes ' "traditionally lawful conduct." ' " (*People v. Rubalcava, supra,* 23 Cal.4th at p. 331.) This factor favors finding strict liability.

### *Difficulty of Ascertaining Facts*

This factor has been relied upon in finding Penal Code section 12020 is a strict liability offense. In *People v. Valencia, supra,* 214 Cal.App.3d 1410, 1415, the court distinguished narcotics cases because narcotics may appear to be an innocent substance; most homes contain white powder, crystalline material, or leafy green substance in the form of baking soda, rock sugar, and oregano. Sawed-off shotguns and other dangerous weapons, however, were not ambiguous and one would not be surprised to learn their possession was not an innocent act. (*Id.* at pp. 1415-1416.)

In *People v. Lanham, supra,* 230 Cal.App.3d 1396, the weapon at issue was a bullet containing an explosive agent. The court considered the defendant's argument that the bullet was distinguishable from a machine gun or sawed-off shotgun because the explosive agent might not be visible to the naked eye (it was in that particular case), but rejected it. "While there is some appeal to this position, the record in this case shows that bullets containing explosives are not sold in the general commercial market but are individually made by persons possessing bullet reloading equipment." (*Id.* at p. 1404, fn. omitted.)

Unfortunately, the record in this case sheds no light on the question of how difficult it is to ascertain that the cane defendant possessed was a cane sword. While the original list of prohibited weapons may have included only those whose dangerous character was immediately apparent, the list now contains many weapons that are designed to conceal their true nature as weapons and others are so uncommon that one cannot say with assurance that innocent possession would be unlikely. As applied generally to all of section 12020(a)(1), this factor favors finding strict liability. The real possibility of innocent possession can be addressed by allowing an affirmative defense, as I explain below.

*Difficulty of Proving Mental State*

As with the difficulty in ascertaining the facts, this factor varies depending on the weapon at issue. In many cases, that the weapon is a dangerous weapon will be obvious, such as a hand grenade, and this standard will be easy to meet. Other weapons, however, have exacting technical specifications. For example, a fléchette dart is defined by statute as "a dart, capable of being fired from a firearm, which measures approximately one inch in length, with tail fins which take up five-sixteenths of an inch of the body." (Pen. Code, § 12020, subd. (c)(6).) Only darts having tail fins of the proper length will qualify as prohibited fléchette darts. (*People v. Olmsted* (2000) 84 Cal.App.4th 270, 276 [100 Cal.Rptr.2d 755].) Routinely proving this specific knowledge would be much more difficult than simply proving a defendant knew he carried an instrument capable of ready use as a stabbing weapon, the mens rea requirement in *People v. Rubalcava, supra*, 23 Cal.4th 322, 332, for carrying a concealed dirk or dagger. Here, defendant's possession of the cane sword in connection with his possession of so many other weapons and ammunition raises an inference of knowledge that he failed to dispel. But in other cases it might be difficult to prove defendant knew his cane was a cane sword.

In *Jorge M.,* the court noted that the serious public threat the assault weapon ban was designed to alleviate required a statutory construction that would not impair effective enforcement and that requiring actual knowledge could impair effective enforcement. (*Jorge M., supra*, 23 Cal.4th at p. 884.) The *Jorge M.* court resolved the problem with a scienter requirement that was satisfied by proof defendant *should have known* the salient characteristics of the weapon. (*Id.* at p. 885.) Thus, while this factor favors strict liability, it does not require it. A scienter requirement of less than actual knowledge may alleviate any effective enforcement concerns.

*Number of Expected Prosecutions*

As noted above, Penal Code section 12020 was designed to outlaw weapons of the criminal's arsenal and reduce violence. (*People v. Grubb, supra*, 63 Cal.2d at p. 620.) As such, a significant number of prosecutions would be expected. The vitality of this statute is also shown by its frequent amendment. Any scienter requirement should not impede the ability to prosecute substantial numbers of violators.

*Conclusion*

Applying the seven factors results in a mixed picture. The stare decisis effect of previous decisions interpreting section 12020(a)(1) favors strict

liability. The factors of the harm to the public, the difficulty in ascertaining facts and proving mental state, and the number of prosecutions favors strict liability or at least a scienter requirement that is not too burdensome to the prosecution. Balanced against this is the harsh penalty and the presumption that mental fault is required. The latter factor, that mens rea is the rule not the exception, has recently been stressed by both the United States and California Supreme Courts. (*Staples v. United States, supra*, 511 U.S. 600, 605-606 [114 S.Ct. 1793, 1796-1798, 128 L.Ed.2d 608, 616]; *People v. Coria* (1999) 21 Cal.4th 868, 876 [89 Cal.Rptr.2d 650, 985 P.2d 970]; *People v. Simon, supra*, 9 Cal.4th 493, 519.)

In *Jorge M.*, the Supreme Court found no compelling evidence the Legislature intended to dispense with a mens rea requirement in Penal Code section 12280, subdivision (b), but the gravity of the public safety threat, together with the substantial number of prosecutions expected and the potential difficulty of proving actual knowledge, convinced the court to construe the statute to require actual knowledge or negligence in regard to the facts making possession of an assault weapon illegal. (*Jorge M., supra*, 23 Cal.4th at p. 887.) Here the Legislature's failure to amend the statute to require a mens rea in light of several cases holding none is required provides evidence of the Legislature's intent. Stare decisis has added force when there has been reliance on the prior decisions. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1213-1214 [23 Cal.Rptr.2d 144, 858 P.2d 611].) Countless prosecutions have relied on case law that declared no requirement to prove a mens rea. Finally, the likelihood of innocent possession seems less likely than in the case of firearms. These considerations tilt the balance more towards finding a strict liability offense.

Balancing the competing concerns, I conclude the Legislature did not intend that the prosecution prove defendant knew the characteristics that bring the weapon within the proscription of section 12020(a)(1). This interpretation, however, does not mean there is no mens rea component to the crime. In his concurring opinion to *People v. Daniels*, the first machine gun case, Presiding Justice Shinn stated: "Nevertheless I am convinced that complete lack of knowledge of the nature of an article, even a machine gun, possession of which is forbidden, would be a good defense." (*People v. Daniels, supra*, 118 Cal.App.2d at p. 345 (conc. opn. of Shinn, J.).)

A mens rea defense was recognized in *People v. Vogel, supra*, 46 Cal.2d 798. In construing a bigamy statute, the Supreme Court held the general requirement of a union of act and wrongful intent meant that one with a bona fide and reasonable belief he was free to marry was not guilty of bigamy.

(*Id.* at p. 801.) The omission of language requiring guilty knowledge from the statute served to reallocate the burden of proof on that issue to defendant. (*Id.* at pp. 802-803.)

This approach, allowing a mens rea defense to be raised by defendant, strikes the proper balance between honoring the stare decisis effect of the case law not requiring the prosecution to prove knowledge, recognizing the significance of a mens rea requirement in our criminal jurisprudence, preventing the conviction of the truly innocent, and not hampering the effective enforcement of section 12020(a)(1). Because defendant failed to raise any such defense in this case, his challenge to the conviction for possession of a cane sword fails.

I would affirm the judgment in its entirety.

Appellant's petition for review by the Supreme Court was denied March 27, 2002. Chin, J., did not participate therein.